JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Inta Mitterbach appeals the decision of the Cuyahoga County Court of Common Pleas, Probate Division, which found her to be a mentally ill person subject to temporary involuntary hospitalization. Finding error in the proceedings below, we reverse and remand.
 {¶ 2} The following facts give rise to this appeal. On October 10, 2006, Mitterbach went to Lakewood Hospital, complaining that she had been exposed to a toxic substance while driving through Columbus. The staff at Lakewood Hospital was more concerned with her mental state. On October 11, 2006, an affidavit was filed by Dr. Abu Syed pursuant to R.C. 5122.11 to commence involuntary commitment proceedings against Mitterbach. The affidavit is a two-page form, which indicated, via check marks, that Mitterbach:
 "(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 "(4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person."
Also included was a handwritten note by Dr. Syed, which stated the following: "Inta has extensive history of psychiatric illness. She is [illegible word] delusional. Speech is rambling and speech is disorganized as well. Pt has been [illegible word] *Page 4 
non-compliant with meds. Needs [illegible word] [illegible word] treatment as [illegible word]."
 {¶ 3} The initial hearing was held on October 19, 2006 at Lakewood Hospital pursuant to R.C. 5122.141. At the hearing the Cuyahoga County Community Mental Health Board presented the testimony of Dr. Syed. Mitterbach testified on her own behalf. The magistrate held that there was clear and convincing evidence that Mitterbach was a mentally ill person subject to involuntary hospitalization, and entered an order of continued commitment. A full hearing was scheduled but never held because Mitterbach was discharged from the hospital prior to the hearing date.
 {¶ 4} Mitterbach filed objections to the magistrate's decision, which were overruled. Further, the court adopted the magistrate's finding that Mitterbach was mentally ill and subject to involuntary hospitalization. Mitterbach appeals, advancing two assignments of error for our review. Her first assignment of error states the following:
 {¶ 5} "The trial court erred in failing to dismiss the instant action when the medical affidavit was insufficient to invoke the probate court's jurisdiction."
 {¶ 6} Mitterbach argues that the affidavit failed to set forth sufficient facts to establish probable cause to invoke the jurisdiction of the court.
 {¶ 7} When a person faces commitment to a mental hospital against her will, the individual's right against involuntary confinement depriving her of liberty must be balanced against the state's interest in committing those who are mentally ill. In re *Page 5 Miller (1992), 63 Ohio St.3d 99, 101-102. It is well recognized that an involuntary civil commitment constitutes a significant deprivation of liberty requiring due-process protection. Id., citing Addington v.Texas (1979), 441 U.S. 418, 425; In re Burton (1984), 11 Ohio St.3d 147,151. R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. When commitment is against a person's will, it is particularly important that the statutory scheme be followed so that the patient's due-process rights receive adequate protection. Id.
 {¶ 8} R.C. Chapter 5122 sets forth two procedures that may be followed when involuntary commitment is sought. One procedure is an emergency hospitalization pursuant to R.C. 5122.10. The other procedure is a non-emergency hospitalization pursuant to R.C. 5122.11. Each procedure requires specific due-process protections.
 {¶ 9} The factor that distinguishes an emergency involuntary commitment from a non-emergency one is the method by which the procedure is initiated. An emergency commitment is initiated when a person is taken into custody without first being afforded a hearing. See R.C.5122.10. A non-emergency commitment, on the other hand, is commenced by the filing of an affidavit alleging facts to indicate probable cause to believe that the person is mentally ill subject to court-ordered hospitalization, thereby invoking the jurisdiction of the court. If the affidavit is sufficient to indicate probable cause, the court must either issue a temporary order of *Page 6 
detention or set the matter for hearing. See R.C. 5122.11.
 {¶ 10} Whichever procedure for involuntary commitment is chosen, due-process rights must be protected, "* * * It is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual. Whether we label this phenomenon] `stigma' or choose to call it something else is less important than that we recognize that it can occur and that it can have a very significant impact on the individual." Addington, 441 U.S. at 425-426.
 {¶ 11} In this case, involuntary commitment proceedings were initiated by affidavit pursuant to R.C. 5122.11, after Mitterbach went to Lakewood Hospital complaining of being exposed to toxic substances. An affidavit of mental illness filed pursuant to R.C. 5122.11 must "contain an allegation setting forth the specific category * * * under division (B) of section 5122.01 of the Revised Code upon which jurisdiction of the court is based and a statement of the alleged facts sufficient to indicate probable cause to believe that the person is a mentally ill person subject to hospitalization by court order." (Emphasis added.) The affidavit must set forth facts that describe specific actions, incidents, or events. The facts provide evidence that a person has engaged in conduct that forms the basis for a finding of probable cause that he or she may be mentally ill and in need of court-ordered hospitalization. In re Miller (1992), 63 Ohio St.3d 99.
 {¶ 12} In this case, the affidavit properly alleged the specific category under *Page 7 
R.C. 5122.01(B) upon which jurisdiction of the court is based. Specifically, the affidavit alleged that R.C. 5122.01(B) subsections (3) and (4) applied to Mitterbach. However, the affidavit must also contain a statement of the alleged facts sufficient to indicate probable cause to believe that the person sought to be confined is a "mentally ill person subject to hospitalization by court order." R.C. 5122.11.
 {¶ 13} "Mental illness" is defined as "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." See R.C. 5122.01(A).
 {¶ 14} In his affidavit, Dr. Syed stated the following: "Inta has extensive history of psychiatric illness. She is [illegible word] delusional. Speech is rambling and speech is disorganized as well. Pt has been [illegible word] non-compliant with meds. Needs [illegible word] [illegible word] treatment as [illegible word]."
 {¶ 15} The affidavit does not substantiate the extensive history of psychiatric illness. Nor does it indicate how or when Mitterbach was non-compliant with her medications, or if and when she was prescribed medications. The affidavit does not indicate how she was delusional or what her delusions were about. The only clear fact alleged is that her speech was rambling and disorganized. Nevertheless, this fact does not substantiate a claim that Mitterbach represents a substantial and immediate risk of serious physical impairment or injury to herself. Further, it does not establish that Mitterbach is unable to provide for and is not providing for her *Page 8 
basic physical needs. Finally, there is nothing to indicate her behavior creates a grave and imminent risk to the substantial rights of others or herself. See In re Mental Illness of Boggs (1990), 50 Ohio St.3d 217. The trial court and the hearing magistrate were placed in an untenable position by the partially unreadable affidavit that lacked the required specificity previously outlined under R.C. 5122.11. The trial court and hearing officer were obviously trying to protect Mitterbach, and potentially the community, by erring on the side of caution when hospitalizing Mitterbach. Nevertheless, we cannot ignore that the factual allegations contained in the affidavit were insufficient to establish probable cause that Mitterbach was a "mentally ill person subject to court order" under R.C. 5122.01(B)(3) and (4). The doctor simply did not properly substantiate the allegations.
 {¶ 16} The affidavit required under R.C. 5122.11 is a necessary prerequisite to invoking the subject matter jurisdiction of the probate court. Accordingly, an improper affidavit does not invoke the court's jurisdiction. In the matter of P.H. (July 10, 1997), Franklin App. No. 96APF12-1729. Because the "affidavit" filed in these proceedings is not a proper affidavit and does not meet the requisites of R.C. 5122.11, the subject matter jurisdiction of the probate court was never invoked, the proceedings against Mitterbach were never properly commenced, and the court's judgment ordering Mitterbach's detention was error. Accordingly, Mitterbach's first assignment of error is sustained.
 {¶ 17} Because our disposition of Mitterbach's first assignment of error renders *Page 9 
her second assignment of error moot under App.R. 12, we decline to address it.
 {¶ 18} We reverse the judgment of the trial court and remand with instructions to vacate its order finding Mitterbach mentally ill and subject to hospitalization by court order.
Judgment reversed and cause remanded with instructions.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
PATRICIA ANN BLACKMON, J., CONCURS; ANTHONY O. CALABRESE, JR., J., DISSENTS (SEE SEPARATE OPINION)