IN RE MENTAL ILLNESS OF BOGGS.

[Cite as In re Boggs (1990), 50 Ohio St. 3d 217.]

(No. 89-341—Submitted February 13, 1990—Decided April 25, 1990.)

*Anthony J. Celebrezze, Jr.,* attorney general, and *Barry M. Ward,* for appellee.

*Lee Petersen,* for appellant.

*Derek S. Hamalian,* urging reversal for *amicus curiae,* Ohio Legal Rights Service.

DOUGLAS, J. R.C. 5122.11 provides in relevant part:

"*Proceedings for the hospitalization of a person* pursuant to sections 5122.11 to 5122.15 of the Revised Code * * * *shall be commenced by the filing of an affidavit* in the manner and form prescribed by the department of mental health, by any person or persons with the court, either on reliable information or actual knowledge, whichever is determined to be proper by the court.

"*The affidavit shall contain an allegation setting forth the specific category* or categories *under division (B) of section 5122.01 of the Revised Code upon which the jurisdiction of the court is based and a statement of alleged facts sufficient to indicate probable cause to believe that the person is a mentally ill person subject to hospitalization by court order.* * * *

"Upon receipt of the affidavit, a judge of the court or referee who is an attorney at law appointed by the court may, where he has probable cause to believe that the person named in the affidavit is a mentally ill person subject to hospitalization by court order, issue a temporary order of detention ordering any health or police officer or sheriff to take into custody and transport such person to a hospital * * *." (Emphasis added.)

Pursuant to R.C. 5122.11, proceedings for judicial hospitalization commence upon the filing of an affidavit which *must* contain a specific allegation setting forth at least one category listed in R.C. 5122.01(B) upon which jurisdiction of the court is based. Also, the affidavit *must* contain a statement of alleged facts sufficient to indicate probable cause to believe that the person sought to be confined is a "*mentally ill person subject to hospitalization by court order.*"

Therefore, by negative implication, if an affidavit is not filed, or if allegations in the affidavit which *must* be present are lacking, the proceedings for judicial hospitalization are never properly commenced. Accordingly, the threshold issue to be decided is whether the judicial hospitalization proceedings against appellant were properly commenced because, if not, ordering appellant's detention was error.

In the case at bar, Blackwood's affidavit contained an allegation that appellant "[w]ould benefit from treatment in a hospital for his [*sic*] mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself [*sic*]." R.C. 5122.01(B)(4) contains this exact language and, accordingly, Blackwood specifically set forth a listed category contained in R.C. 5122.01(B) upon which the court's jurisdiction is based.

However, pursuant to R.C. 5122.11, the affidavit *must also* contain a statement of alleged facts sufficient to indicate probable cause to believe that the person sought to be confined is a *"mentally ill person subject to hospitalization by court order."* As such, R.C. 5122.01(B) provides in relevant part:

" *'Mentally ill person subject to hospitalization by court order'* means a mentally ill person who, because of his illness:

"* * *

"(4) Would benefit from treatment in a hospital for his *mental illness* and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself." (Emphasis added.)

R.C. 5122.01(A) provides:

" *'Mental illness'* means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." (Emphasis added.)

In his affidavit, Blackwood stated that appellant sent letters to "* * * various official sources such as school principals and agencies * * *" and "[t]he letters appear to show delusional content * * *" focusing on Blackwood's sexual behavior and criminal conduct. Further, Blackwood stated that appellant was "[r]eligiously preoccupied — thinks that God has told her to do certain things outlined in the letters." Finally, the affidavit contained a statement which apparently alleged that appellant had a history of noncompliance with medications. Ap-

parently, one of appellant's letters was attached to the affidavit.[3]

The affidavit and the letter attached thereto do not substantiate appellant's alleged religious preoccupation even if we were to assume that the allegation could constitute a basis for involuntary commitment. Nor was any evidence presented in the affidavit that substantiates the alleged history of noncompliance with medication, or that the medications were prescribed and not taken, even if we were to assume that the failure to take medications could constitute a basis for involuntary commitment. Thus, these allegations do not make it probable, or more likely than not, that appellant suffers from a "mental illness"; that appellant would benefit from hospitalization; that appellant is in need of treatment; or that appellant's activities create a grave and imminent risk to the substantial rights of herself or others (*i.e.*, that appellant is a "mentally ill person subject to hospitalization by court order").

Likewise, Blackwood's allegations that appellant's letters contain delusional content focusing on Blackwood's alleged sexual perversions and child molestation, in conjunction with the letter appended to the affidavit, do not constitute probable cause to believe that appellant is a "mentally ill person subject to hospitalization by court order." The affidavit contains no allegation that the letters falsely accuse Blackwood. The letters may contain truthful allegations since no evidence was contained in the affidavit that alleged otherwise. Even if the content of the letters is false, the filing of an affidavit alleging mental illness is

---

[3] Given the state of the record before us, we are unable to determine how many of appellant's letters, if any, were attached to the affidavit. However, we will assume that one of the letters entitled "Dear Principal" was attached to the affidavit as indicated at the hearing before the referee.

not the appropriate mechanism in which to ascertain the truth or falsity of accusations which may or may not be constitutionally protected. Disapproval or disbelief of a person's statements does not provide an adequate basis for involuntarily committing that person. Our society oftentimes grants every person the right to be wrong, as the alternative may constitute censorship and promote tyranny.[4]

Therefore, we hold that the jurisdiction of a court may not be invoked by an affidavit alleging that a person is a "mentally ill person subject to hospitalization by court order" under R.C. 5122.01(B)(4) when the factual allegations contained in the affidavit are insufficient to establish probable cause.

Appellant argues that R.C. 5122.01(B)(4) is unconstitutional as being vague and overbroad both on its face and as applied to appellant. However, constitutional issues should not be decided by this court unless absolutely necessary. See, e.g., *Hall China Co.* v. *Pub. Util. Comm.* (1977), 50 Ohio St. 2d 206, 210, 4 O.O. 3d 390, 393, 364 N.E. 2d 852, 854. We have found that no probable cause existed to order appellant's detention based upon the affidavit and the letter appended thereto. Therefore, pursuant to R.C. 5122.11, the court's jurisdiction was never properly invoked by the facially invalid affidavit.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. I disagree with the court's holding that no probable cause existed justifying appellant's detention and examination. Thus, I must respectfully dissent.

---

[4] For example, in *Desert Sun Pub. Co.* v. *Superior Ct.* (1979), 97 Cal. App. 3d 49, 51, 158 Cal. Rptr. 519, 520-521, it was stated that:

"* * * It is an essential part of our national heritage that an irresponsible slob can stand on a street corner and, with impunity, heap invective on all of us in public office. At such times the line between liberty and license blurs. However, our dedication to basic principles of liberty and freedom of expression will tolerate nothing less. The alternative is censorship and tyranny.

"Our political history reeks of unfair, intemperate, scurrilous and irresponsible charges against those in or seeking public office. Washington was called a murderer, Jefferson a blackguard, a knave and insane (Mad Tom), Henry Clay a pimp, Andrew Jackson a murderer and an adulterer, and Andrew Johnson and Ulysses Grant drunkards. Lincoln was called a half-witted usurper, a baboon, a gorilla, a ghoul. Theodore Roosevelt was castigated as a traitor to his class, and Franklin Delano Roosevelt as a traitor to his country. Dwight D. Eisenhower was charged with being a conscious agent of the Communist Conspiracy."