DECISION
{¶ 1} Respondent-appellant, K.W. ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, Probate Division, which found that appellant was a mentally ill person subject to hospitalization and granted to petitioner-appellee, Franklin County Alcohol, Drug Addiction and Mental Health Board ("appellee"), permission to medicate appellant against her will. For the following reasons, we affirm.
 {¶ 2} On June 7, 2006, Dr. Marion Sherman filed in the trial court an affidavit of mental illness and an application for forced psychotropic medication regarding *Page 2 
appellant. Dr. Sherman's affidavit stated that appellant had been diagnosed as having a delusional disorder. She had been transferred to a mental health facility from a correctional institution, where she had been incarcerated for several months on charges of threatening President Bush. The affidavit stated that she had refused all treatment, would not speak to anyone, and had refused to eat since her admission on June 2.
 {¶ 3} On June 14, 2006, a hearing was held before a magistrate of the trial court. Following the hearing, the magistrate found that appellant was a mentally ill person subject to hospitalization and granted appellee's application for forced medication. Immediately following the hearing, appellant filed objections to the magistrate's decision. On July 12, 2006, after a hearing, the trial court issued an entry, which overruled appellant's objections and adopted the magistrate's decision.
 {¶ 4} Appellant appealed that decision to this court. In In reK.W., Franklin App. No. 06AP-731, 2006-Ohio-4908, this court affirmed the trial court's decision.
 {¶ 5} Appellant's original commitment was for a period of 90 days. On September 1, 2006, hearings were held before a magistrate of the trial court for the purpose of determining whether appellant should be subject to continued commitment and whether the hospital could forcibly medicate appellant. Following these hearings, the magistrate found that appellant continued to be mentally ill, was subject to forced hospitalization, and was subject to forced medication. Appellant filed no objections to the magistrate's decisions. On September 1, 2006, the trial court issued judgment entries allowing commitment and authorizing forced psychotropic medication and lab work. *Page 3 
 {¶ 6} On September 19, 2006, appellant filed a notice of appeal. She raises a single assignment of error:
 THE TRIAL COURT'S DECISION TO COMMIT THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 7} Before reaching the merits of appellant's appeal, we address the question whether the appeal is moot because appellant has been released from hospitalization. Although neither party has filed a motion to dismiss the appeal, counsel for both parties stated at oral argument that appellant had been medicated while hospitalized and, upon some improvement in her condition, had been released. However, appellant's counsel has been unable to contact appellant in order to determine her desire for continuing the appeal.
 {¶ 8} Actions are moot when " `they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations.' " Lingo v. Ohio Cent. RR., Inc., Franklin App. No. 05AP-206,2006-Ohio-2268, at ¶ 20, quoting Grove City v. Clark, Franklin App. No. 01AP-1369, 2002-Ohio-4549, at ¶ 11. See, also, Robinson v. Indus.Comm., Franklin App. No. 04AP-1010, 2005-Ohio-2290, at ¶ 6 (holding that an action is moot "when a litigant receives the relief sought before the completion of the lawsuit"). Arguably, this action is moot because appellant has received the relief she sought through this appeal, i.e., release from involuntary hospitalization.
 {¶ 9} However, the Ohio Supreme Court has recognized that an individual's discharge from forced hospitalization does not moot that individual's petition for relief because "[t]he issue concerning continuing collateral disability must still be determined." In reKlepper (1977), 49 Ohio St.2d 211, 212 (reversing a lower court's dismissal of an *Page 4 
action for writ of habeas corpus). Instead, Ohio courts have held that appeals from involuntary commitment entries are not moot "because any involuntary commitment order is a collateral disability since `[a] permanently recorded judicial declaration that appellant was incarcerated for mental illness carries a stigma * * * [which] * * * affects employment as well as personal and social life.' " In reSmith (Sept. 29, 1993), Athens App. No. 92CA1561, quoting In reMiller (June 29, 1990), Richland App. No. CA-2739. Accord In reKuehne (July 6, 1999), Butler App. No. CA98-09-192.
 {¶ 10} In addition, a court may rule on an otherwise moot case where the issues are capable of repetition, yet evade review. State ex rel.Plain Dealer Publishing Co. v. Barnes (1988), 38 Ohio St.3d 165, paragraph one of the syllabus. A case is capable of repetition where there is a reasonable expectation that the same complaining party will be subjected to the same action again. State ex rel. Beacon JournalPublishing Co. v. Donaldson (1992), 63 Ohio St.3d 173, 175.
 {¶ 11} Here, appellant challenges the trial court's order of continued involuntary commitment. Because involuntary commitment constitutes a collateral disability, there is evidence that appellant has been subjected to repeated hospitalization, and, in any event, our record contains no documentation of appellant's release, we find that the present appeal is not moot. Thus, we turn to the merits.
 {¶ 12} By her sole assignment of error, appellant asserts that the trial court's finding that appellant is a mentally ill person subject to hospitalization under R.C. 5122.01 is against the manifest weight of the evidence. We will not reverse such a finding as against the manifest weight of the evidence if it is "supported by some *Page 5 
competent, credible evidence going to all the essential elements of the case[.]" CE. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
 {¶ 13} As an initial matter, we recognize that an involuntary commitment of an individual is a significant deprivation of liberty.Addington v. Texas (1979), 441 U.S. 418, 425; In re Burton (1984),11 Ohio St.3d 147, 151; In re Miller (1992), 63 Ohio St.3d 99, 101. R.C. Chapter 5122 prescribes the procedures to be followed when a person is committed to a mental hospital, whether that commitment is voluntary or involuntary. When the commitment is involuntary, "it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection." Miller at 101.
 {¶ 14} "[T]he individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill and who pose a continuing risk to society or to themselves." In re T.B., Franklin App. No. 06AP-477, 2006-Ohio-3452 (" In re T.B. I"), citing Miller. While confining a mentally ill person found to be a risk to herself or society both protects society and provides help for the illness, "the state nonetheless must meet a heavy burden to show that the individual in fact suffers from a mental illness and must be confined in order to treat the illness." In re T.B., Franklin App. No. 06-769, 2006-Ohio-4789 ("In reT.B. II").
 {¶ 15} Ohio law establishes a three-prong test for an involuntary commitment, and each part must be met by clear and convincing evidence.In re T.B. I, citing State v. Welch (1997), 125 Ohio App.3d 49. First, there must be a substantial disorder of thought, mood, perception, orientation or memory. Id.; R.C. 5122.01(A). Second, that *Page 6 
disorder must grossly impair judgment, behavior, the capacity to recognize reality or the ability to meet the ordinary demands of life.In re T.B. I; R.C. 5122.01(A). And third, the evidence must support hospitalization under one or more of the bases provided in R.C.5122.01(B). In re T.B. I.
 {¶ 16} The third prong of the test — that is, whether the trial court's finding that appellant is a mentally ill person subject to hospitalization by court order, was supported by competent, credible evidence that fulfills one or more of the R.C. 5122.01(B) requirements — is at issue here. R.C. 5122.01(B) provides:
 "Mentally ill person subject to hospitalization by court order" means a mentally ill person who, because of the person's illness:
 (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
 (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 (4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person. *Page 7 
 {¶ 17} Here, the trial court found appellant to be a mentally ill person subject to court-ordered hospitalization under R.C.5122.01(B)(2), (B)(3), and (B)(4). Appellant makes no specific argument as to any of these grounds, but simply argues that the evidence introduced at the September 1, 2006 hearing was "insufficient to show that Appellant was mentally ill and that she lacked the necessary capacity to make an informed choice regarding her treatment needs." We disagree.
 {¶ 18} In his affidavit of mental illness, Dr. Sherman stated:
 * * * [K.W.] has a diagnosis of Delusional Disorder [and] was admitted from [Franklin County Correctional Center] where she has been incarcerated for the past several month[s] on Federal charges of threatening President Bush. She remains delusional, stating that she is in the "witness protection program and has diplomatic immunity[."] She is refusing to eat and believes the food and water make her break out. She has not eaten since her admission on 6/2/06. She has accepted only coffee. She is refusing all treatment and will not talk to anyone. She has been hostile, agitated, angry and menacing toward others since her admission.
 {¶ 19} At the June 14, 2006 hearing, Dr. William Bates testified that appellant had a long-standing delusional disorder, which had resulted in numerous psychiatric hospitalizations and incarcerations. He testified:
 * * * She, for a while, thought that her food was being poisoned and wasn't eating appropriately. As a result of numerous threats that she made against the President of the United States and other officials, she was incarcerated over most of the last year.
 Recently, she was in, I believe it was the Franklin County jail where her psychosis re-emerged very severely. She was agitated, acting bizarrely, refusing to talk, refusing to take care of herself, thought that her food was poisoned, and she *Page 8 
was transferred to this facility where at this point she remains uncooperative with treatment.
(Tr. at 7-8.)
 {¶ 20} When asked whether appellant represents a substantial risk of harm to herself or others, Dr. Bates stated:
 Well, she's made threats against the President to the point that she's been incarcerated for over most of the past year. She's really not able to take care of her basic needs, and she's very hostile in her attitude towards staff and others in the facility here.
(Tr. at 8.)
 {¶ 21} Based on this evidence, we concluded that there was competent, credible evidence in support of the trial court's finding that appellant is a mentally ill person subject to hospitalization under R.C.5122.01(B)(3). See In re K.W.
 {¶ 22} At the September 1, 2006 hearing, Dr. Bates similarly testified:
 The patient has a long-standing delusional disorder. It's a disorder characterized primarily by the presence of fixed false beliefs. She has numerous fixed false beliefs of a bizarre and goofy nature, things that are obviously not correct. * * *
(Tr. at 9-10.)
 {¶ 23} Dr. Bates stated that appellant has delusions concerning her relation to famous people, including Benjamin Franklin, Franklin Delano Roosevelt, and Queen Elizabeth. She also has made threats against the president of the United States and other government officials. "She has been hospitalized numerous times and is very unwilling to accept treatment, certainly doesn't take it as an outpatient and has not taken any during this inpatient stay." (Tr. at 10.) *Page 9 
 {¶ 24} Dr. Bates described appellant as "extremely irritable, hostile, threatening, menacing in her attitude and approach to people. She's very explosive." (Tr. at 13.) When asked whether appellant represents a substantial risk of harm to herself or others, Dr. Bates responded:
 Well, I don't think that she's suicidal by any means. But I don't think she can take care of her basic needs outside of a structured setting such as this. Within settings like this, she's basically being taken care of. She can't take care of herself, I don't believe. She's very hostile, threatening, menacing, screaming, putting herself into jeopardy * * *
(Tr. at 13.)
 {¶ 25} When asked if there is a meaningful chance that, without medication, appellant will improve and cease to be a risk of harm to herself and others, Dr. Bates stated: "No, absolutely none. And the * * * longer she goes without medication, the less likely she is ever to improve and the less likely she is to show significant improvement." (Tr. at 15.) With medication, however, Dr. Bates testified that "there's a good chance that she'll show some benefit." (Tr. at 16.)
 {¶ 26} Following the magistrate's finding that appellant is mentally ill and its order of commitment, appellee also introduced the testimony of Dr. Richard Freeland, appellant's treating psychiatrist, for the purpose of obtaining a forced medication order. Dr. Freeland testified that appellant lacked the ability to make informed decisions concerning her treatment, that she would benefit from medication, and that there were no less intrusive alternatives available.
 {¶ 27} Based on the record before us, we conclude that the trial court's decisions were not against the manifest weight of the evidence. As we detailed above, Dr. Bates *Page 10 
testified that appellant suffers from a long-standing delusional disorder, which prevents her from perceiving reality, living within the norms of society, and taking care of herself. She represents a threat to others, as demonstrated by her incarceration for making threats against government officials, including the president of the United States. Dr. Freeland similarly testified that appellant suffers from delusional thinking, which prevents her from recognizing her mental illness and making informed treatment decisions. Appellant presented no contrary evidence. Thus, we overrule appellant's assignment of error respecting the trial court's decisions.
 {¶ 28} Having overruled appellant's sole assignment of error, we affirm the decision of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
 FRENCH, J., SADLER, P.J., and KLATT, J., concur. *Page 1