[Cite as *In re D.B.*, 2014-Ohio-1464.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In re D.B.,                         :

    (Appellant).              :           No. 14AP-44
                                          (Prob. No. MI 20861)

                        :          (REGULAR CALENDAR)

                        :

D E C I S I O N

Rendered on February 20, 2014

*Steven McGann Law Office*, and *Steven McGann*, for appellant.

*Gregory S. DuPont, Attorney At Law, Ltd.,* and *Gregory S. DuPont*, for appellee Franklin County ADAMH Board.

*Blumestiel, Evans, Falvo, LLC*, and *J.M. Evans*, for appellee Twin Valley Behavioral Health Care.

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

TYACK, J.

{¶ 1} Appellant, D.B., appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, committing appellant to the Franklin County Alcohol, Drug Abuse, and Mental Health Board ("Franklin County ADAMH Board") for a period not to exceed 90 days and authorizing the forced administration of psychotropic medication to him. For the following reasons, we reverse and remand for further proceedings.

### Facts and Procedural History

{¶ 2} On December 23, 2013, an affidavit of mental illness was filed regarding appellant. The same day, an order of detention was issued. On December 24, 2013, an

application to authorize forced psychotropic medications for appellant was filed. Then, on December 27, 2013, a magistrate conducted a hearing on the affidavit and application.

{¶ 3} At the hearing, William Bates, M.D., a psychiatrist, testified that appellant had a psychotic disorder not otherwise specified. (Tr. 5, 7-8.) According to Dr. Bates, appellant had a "significant disturbance of thought," resulting in grossly impaired judgment. (Tr. 8-9.) Dr. Bates opined that appellant represented a danger to himself because he was "completely unable to take care of his basic needs at this time on his own." (Tr. 9.) In addition, Dr. Bates felt appellant needed in-patient stabilization in a psychiatric facility because he was not cooperative with treatment. (Tr. 9.) Dr. Bates provided the following summary of the factual basis for his opinions:

> It's somewhat confusing, but [appellant] apparently was in a shelter in Dayton at which time he was bothered by a cough, apparently he was coughing, and he felt that his cough was somehow intentional and that it was affecting his emotions and his sternum, in particular, and as a result of that, he was having breathing difficulties.
>
> He traveled from * * * Dayton to Las Vegas to Florida and back to Columbus, and somehow the cough kept following; it was harassing him.
>
> His mother took him here to, I think, Grant Medical Center. They felt that he was having paranoid delusions, and he was pink-slipped to NetCare on the 20th of this month and transferred here on the 21st, where he remains grossly psychotic.

(Tr. 10.)

{¶ 4} After Dr. Bates testified, appellant introduced into evidence a few pieces of paper, some signed by appellant, with brief statements on them such as, "Perception," "I don't worry," "I'm innocent," and "High school diploma. Degree in culinary arts." (Tr. 19.) The magistrate orally found appellant was a mentally ill person subject to court-ordered hospitalization. Then the court proceeded to the hearing on the application for forced medication. (Tr. 20.) The court orally granted the application, finding appellant lacked the ability to give or withhold informed consent regarding his treatment, the

benefits of the proposed medication and treatment outweighed the risks of potential side effects, and no less intrusive treatment was available. (Tr. 37-38.)

{¶ 5} After the magistrate memorialized the oral findings in a written decision, appellant filed objections, which the trial court overruled. The trial court adopted the magistrate's decision and committed appellant to the Franklin County ADAMH Board, with placement at Twin Valley Behavioral Health Care, for a period of time not to exceed 90 days and granted the application for forced psychotropic medication.

### *Assignments of Error*

{¶ 6} Appellant appeals and assigns two errors for our review:

> [I.] THE TRIAL COURT ERRED IN ADOPTING THE DECEMBER 27, 2013 MAGISTRATE'S REPORT AND DECISION FINDING THAT APPELLANT SUFFERS FROM A MENTAL ILLNESS REQUIRING HOSPITALIZATION.

> [II.] THE TRIAL COURT ERRED IN ADOPTING THE DECEMBER 27, 2013 MAGOSTRATE'S [sic] REPORT AND DECISION FINDING THAT APPELLANT SUFFERS FROM A MENTAL ILLNESS AND REQUIRES FORCED PSYCHOTROPIC MEDICATION.

### *Discussion*

{¶ 7} Preliminarily, we note appellant acknowledges he was released to family members on January 24, 2014, so at first glance, this matter appears to be moot. Appellant's brief, 6. "Actions are moot when ' "they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." ' " *In re K.W.*, 10th Dist. No. 06AP-943, 2007-Ohio-699, ¶ 8, quoting *Lingo v. Ohio Cent. RR., Inc.*, 10th Dist. No. 05AP-206, 2006-Ohio-2268, ¶ 20, in turn, quoting *Grove City v. Clark*, 10th Dist. No. 01AP-1369, 2002-Ohio-4549, ¶ 11. However, this matter is not moot. "An adjudication by the probate court of mental illness carries a stigma that can have a significant impact and adverse consequences on the individual's life." *In re R.T.*, 10th Dist. No. 13AP-291, 2013-Ohio-4886, ¶ 6, citing *In re Miller*, 63 Ohio St.3d 99, 108 (1992). Thus, we will address the merits of the appeal.

{¶ 8}    Under the first assignment of error, appellant contends the trial court's finding that he suffered from a mental illness that required hospitalization was against the manifest weight of the evidence.  "Judgments supported by some competent, credible evidence addressing all the essential elements of the case will not be reversed on appeal as against the manifest weight of the evidence."  *In re T.B.*, 10th Dist. No. 11AP-99, 2011-Ohio-1339, ¶ 7 ("*In re T.B. II*"), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978).

{¶ 9}    "R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. When commitment is against a person's will, it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection."  *In re Miller* at 101.  "[T]he individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill and who pose a continuing risk to society or to themselves."  *In re T.B.*, 10th Dist No. 06AP-477, 2006-Ohio-3452, ¶ 5 ("*In re T.B. I*"), citing *In re Miller* at 101. "Although confining mentally ill persons adjudged to be a risk to themselves or society both protects society and provides treatment in the hope of alleviating the mental illness, the state nonetheless must meet a heavy burden to show that the individual in fact suffers from a mental illness and must be confined in order to treat the mental illness."  *In re T.B. II* at ¶ 8, citing *In re T.B. I* at ¶ 6.

{¶ 10} Under Ohio law there is a three-part test for an involuntary commitment.  "Each part of this test must be established by clear and convincing evidence."  *In re T.B. I* at ¶ 7. " The first two parts of the test are found in R.C. 5122.01(A)." Initially, "there must be a substantial disorder of thought, mood, perception, orientation, or memory."  Second, "the substantial disorder of thought, mood, perception, orientation, or memory must grossly impair judgment, behavior, capacity to recognize reality, or the ability to meet the ordinary demands of life."  *Id.* at ¶ 7, citing *State v. Welch*, 125 Ohio App.3d 49, 52 (11th Dist.1997), and R.C. 5122.01(A).  Third, the mentally ill person must be hospitalized "for one of the reasons set forth in R.C. 5122.01(B)."  *Id.* at ¶ 8, citing *Welch* at 52.

{¶ 11} Under R.C. 5122.01(B), a mentally ill person subject to hospitalization by court-order is one who, because of the person's mental illness: (1) "[r]epresents a

substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm"; (2) "[r]epresents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness"; (3) "[r]epresents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence" he or she "is unable to provide for and is not providing" for his or her "basic physical needs because" of his or her "mental illness and that appropriate provision for those needs cannot be made immediately available in the community"; or (4) "[w]ould benefit from treatment in a hospital" for his or her "mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person."

{¶ 12} "The Supreme Court of Ohio established a totality of the circumstances test to determine whether a person is subject to hospitalization under R.C. 5122.01(B)." *In re T.B. II* at ¶ 13, citing *In re Burton*, 11 Ohio St.3d 147, 149 (1984). "The factors the probate court is to consider include, but are not limited to: (a) 'whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society'; (b) 'psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent'; (c) 'whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed'; (d) 'the grounds upon which the state relies for the proposed commitment'; (e) 'any past history which is relevant to establish the individual's degree of conformity to laws, rules, regulations, and values of society'; and (f) 'if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically-suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.' " *Id.* at ¶ 13, quoting *In re T.B. I* at ¶ 9, in turn, citing *In re Burton* at 149-50.

{¶ 13} Here, the magistrate found appellant was subject to hospitalization under R.C. 5122.01(B)(3) and (4). Appellant argues those findings are against the manifest weight of the evidence. Admittedly, Dr. Bates opined appellant represented a danger to

himself because appellant was "completely unable to take care of his basic needs at this time on his own." (Tr. 9.) However, the only basis Dr. Bates gave for this opinion was the fact that appellant evidently heard a persistent, non-existent cough. We see no readily apparent connection between this fact and a finding that appellant manifested he was unable to provide for and was not providing for his basic physical needs because of mental illness. Likewise, we see no readily apparent connection between appellant's belief about a cough and a finding that his behavior created a grave and imminent risk to substantial rights of others or himself. Additionally, the documents appellant introduced into evidence, while unusual, do not support such findings. Therefore, the court's finding that appellant was subject to hospitalization was against the manifest weight of the evidence. The court erred when it involuntarily committed appellant, and we sustain the first assignment of error.

{¶ 14} In his second assignment of error, appellant contends the probate court erred when it found he suffered from a mental illness and required forced psychotropic medication.

{¶ 15} According to the Supreme Court of Ohio:

> A court may issue an order permitting hospital employees to administer antipsychotic drugs against the wishes of an involuntarily committed mentally ill person if it finds, by clear and convincing evidence, that: (1) the patient does not have the capacity to give or withhold informed consent regarding his/her treatment; (2) it is in the patient's best interest to take the medication, i.e., the benefits of the medication outweigh the side effects; and (3) no less intrusive treatment will be as effective in treating the mental illness.

*Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176 (2000), paragraph six of the syllabus.

{¶ 16} The magistrate applied this standard in granting the application for forced administration of psychotropic medication. However, appellant's brief fails to mention this standard or articulate a specific argument for the second assignment of error that is distinct from his argument on the first assignment of error. *See* App.R. 12(A)(2). Nonetheless, the *Steele* test implies that a legally proper involuntary commitment order is a prerequisite to an order for forced medication. We have already determined the trial

court erred in this case when it involuntarily committed appellant.  Therefore, the court also erred when it granted the application for forced administration of medication. Accordingly, we sustain the second assignment of error.

### *Conclusion*

{¶ 17} Have sustained both assignments of error, we reverse the trial court's judgment and remand for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

KLATT and CONNOR, JJ., concur.