[Cite as *In re: P.A.*, 2018-Ohio-2314.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | Case No. 17AP-728 |
| | | (C.P.C. No. MI-26445) |
| P.A., | : | |
| | | (ACCELERATED CALENDAR) |
| (Respondent-Appellant). | : | |

---

## D E C I S I O N

### Rendered on June 14, 2018

---

**On brief:** *J. Michael Evans*, for appellee. **Argued:** *Gregory S. Dupont.*

**On brief:** *Steven McGann Law Office*, and *Steven McGann*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas, Probate Division

KLATT, J.

{¶ 1} Respondent-appellant, P.A., appeals a judgment of the Franklin County Court of Common Pleas, Probate Division, that involuntarily committed P.A. for inpatient mental health treatment and authorized forced medication of psychotropic drugs. For the following reasons, we affirm that judgment.

{¶ 2} On September 12, 2017, Dr. Ann Morrison, the chief clinical officer of Twin Valley Behavior Healthcare Hospital ("Twin Valley"), submitted an affidavit of mental illness to the probate court. In the affidavit, Dr. Morrison stated that P.A. was a mentally ill person subject to court order under the criteria set forth in R.C. 5122.01(B)(2), (3), and (4). Dr. Morrison explained:

> [P.A.] is a 35 year old female, who was admitted to [Twin Valley] on 8/17/2017 with a legal status of Incompetent to

Stand Trial, Unrestorable, related to charges of Assault, Criminal Trespass (7 counts), Resisting Arrest, and Failure to Disclose Personal Information. [P.A.] has been diagnosed with Bipolar Disorder, unspecified. * * * She reportedly received legal charges while homeless, resulting in attempts to stay in multiple businesses after businesses closed as a means of shelter. On one occasion, when a property owner asked [P.A.] to leave the premises she became erratic and assaultive. During all these incidents, [P.A.] was uncooperative with law enforcement, refused to provide basic information, and was resistant and evasive. On one occasion (5/14/17), she reported she had been sexually assaulted the night before, and when asked to elaborate about the assault, [P.A.] stated she knew "in her spirit" that she was assaulted while she slept. Since her admission to [Twin Valley], [P.A.] has refused medication and demonstrated poor judgement [sic] and poor insight into her mental health needs. She was involved in a physical altercation with her roommate while at [Twin Valley], and has been unable to share a room due to paranoia and irritability. She isolates to her room and does not participate in provided groups or interact with peers. It was reported [P.A.] was naked in her room when the adjoining unit (an all male unit) was in the court yard outside her window and could see her. She has reported she believes people are saying things about her and she appears paranoid. [P.A.] has also reported she can see into other people's spirits and can see when they have an evil spirit within them. [P.A.] does admit to continued symptoms of depression, and admitted to hearing voices in the past, but believes the voices were "spirits" telling her to hurt herself. [P.A.] has a severe mental illness and lacks capacity to make treatment decisions. Due to her mental illness, her thoughts, perceptions, moods, judgements [sic], and behaviors are grossly impaired, causing her to be at risk in the community in that she is unable to provide for her basic needs such as maintaining adequate housing. [P.A.] has been homeless since January and is banned from the local shelter due to having a physical altercation with another female while there. She also poses a risk to others, which is demonstrated by her recent history of assaultive behavior. * * * She would benefit from continued inpatient psychiatric treatment at this time.

(Sept. 12, 2017 Affidavit of Mental Illness at 2.)

{¶ 3} At the same time Dr. Morrison submitted the affidavit of mental illness, she also filed with the probate court an application to authorize the forced psychotropic

medication of P.A.[1] In the application, Dr. Morrison alleged P.A. was psychotic and unlikely to improve without antipsychotic medication. P.A., however, was refusing to take that medication.

{¶ 4} A magistrate reviewed the affidavit of mental illness and found probable cause to believe that P.A. was a mentally ill person subject to court order. Consequently, the magistrate ordered P.A.'s continued detention at Twin Valley. In a separate order, the magistrate scheduled a full hearing for consideration of the affidavit of mental illness and the application for forced psychotropic medication. The magistrate appointed counsel for P.A. and designated Dr. William Bates, a psychiatrist, as the court doctor.

{¶ 5} The full hearing occurred on September 15, 2017. Dr. Bates, Dr. Davis, and P.A. testified at the hearing. Based on the evidence submitted, the magistrate found that P.A. was a mentally ill person subject to court order and committed her to Twin Valley for 90 days. The magistrate also granted the application for forced psychotropic medication.

{¶ 6} P.A. objected to the magistrate's decisions. In a judgment entered September 27, 2017, the probate court overruled P.A.'s objections and adopted the magistrate's decisions.

{¶ 7} P.A. now appeals the September 27, 2017 judgment, and she assigns the following errors:

> [1.] THE TRIAL COURT ERRED IN ADOPTING THE SEPTEMBER 15, 2017 MAGISTRATE'S REPORT AND DECISION FINDING THAT APPELLANT SUFFERS FROM A MENTAL ILLNESS REQUIRING HOSPITALIZATION.
>
> [2.] THE TRIAL COURT ERRED IN ADOPTING THE SEPTEMBER 15, 2017 MAGISTRATE'S REPORT AND DECISION FINDING THAT APPELLANT SUFFERS FROM A MENTAL ILLNESS AND REQUIRES FORCED PSYCHOTROPIC MEDICATION.

{¶ 8} By her first assignment of error, P.A. challenges the trial court's finding that she is a mentally ill person subject to court order. According to P.A., because she is not a

---

[1] Dr. Gary Davis, P.A.'s treating psychiatrist, joined Dr. Morrison in applying for the authority to medicate P.A. against her wishes.

mentally ill person subject to court order, the trial court erred in involuntarily committing her to Twin Valley for mental health treatment for 90 days.[2]  We disagree.

{¶ 9} R.C. Chapter 5122 sets forth specific procedures for the involuntary commitment of a person to a mental hospital.  In a non-emergency situation, that process commences with the filing of an affidavit of mental illness in the probate court.  R.C. 5122.11; *In re Miller*, 63 Ohio St.3d 99, 101 (1992).  In the affidavit, the affiant must state facts sufficient to indicate probable cause to believe that the person named in the affidavit is a mentally ill person subject to court order.  R.C. 5122.11; *Miller* at 105.  If the probate court determines that such probable cause exists, the court may order the temporary detention of the person and/or set the matter for further hearing.  R.C. 5122.11.

{¶ 10} Ultimately, the probate court must afford the respondent, i.e., the person alleged to be mentally ill, a full hearing conducted as required by R.C. Chapter 5122 and due process of law.  R.C. 5122.15(A).  If, upon completion of the full hearing, a probate court "finds by clear and convincing evidence that the respondent is a mentally ill person subject to court order," the court may commit the respondent to a hospital for a period not to exceed 90 days.  R.C. 5122.15(C).

{¶ 11} A "mentally ill person subject to court order" is "a mentally ill person, who because of the person's illness:

> (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence or recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's

---

[2] Although the 90-day period of court-ordered hospitalization has long since ended, this case is not moot. Because an adjudication of mental illness carries a stigma and can have adverse consequences that significantly impact a person's life, this court reviews commitment orders even if those orders have expired. *In re D.B.*, 10th Dist. No. 14AP-44, 2014-Ohio-1464, ¶ 7; *In re R.T.*, 10th Dist. No. 13AP-291, 2013-Ohio-4886, ¶ 6.

mental illness and that appropriate provision for those needs cannot be made immediately available in the community;

(4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person[.]

R.C. 5122.01(B)(1) through (4).[3] A "mental illness" is a "substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." R.C. 5122.01(A).

{¶ 12} Given these definitions, to involuntarily commit a person, a probate court must find by clear and convincing evidence that: (1) the person has a substantial mental disorder, (2) the mental disorder grossly impairs the person's functioning, and (3) the person must be hospitalized for one of the reasons set forth in R.C. 5122.01(B)(1) through (4). *In re D.B.*, 10th Dist. No. 14AP-44, 2014-Ohio-1464, ¶ 10; *In re R.T.*, 10th Dist. No. 13AP-291, 2013-Ohio-4886, ¶ 12. Courts must utilize a "totality of the circumstances" test to determine whether an allegedly mentally ill person is subject to hospitalization under R.C. 5122.01(B)(1), (2), (3), or (4). *In re Burton*, 11 Ohio St.3d 147 (1984), paragraph one of the syllabus. The factors a court must consider include, but are not limited to:

(1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

---

[3] The General Assembly amended R.C. 5122.01(B) in 2014 to add a fifth subsection. 2014 Am.Sub.S.B. No. 43. However, a person who meets only the criteria described in that subsection is not subject to hospitalization. R.C. 5122.01(B)(5)(b). Accordingly, we do not consider that subsection in this decision.

*Id.* at 149-50.

{¶ 13} Where, as here, the trial court applies a clear-and-convincing standard of review, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990); *accord R.T.* at ¶ 12 (applying this law in determining whether the trial court erred in involuntarily hospitalizing the appellant under R.C. Chapter 5122). If the judgment is supported by some competent, credible evidence going to all the essential elements of the case, an appellate court must affirm it. *Schiebel* at 74. In determining whether the record contains the necessary competent, credible evidence, a reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. However, reviewing courts "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 14} In the case at bar, Dr. Bates testified that he examined P.A. and reviewed her medical records. Dr. Bates diagnosed P.A. with a psychotic disorder not otherwise specified. Dr. Bates stated that P.A.'s mental illness substantially disturbed her ability to think, which resulted in gross impairment of her judgment. He further opined that:

> [P.A.] has a recent history of numerous episodes of aggression towards other people. So I think she represents a danger towards -- to others.
>
> She's been unable to take care of her basic needs; doesn't recognize that she has a mental illness; is not taking care of her psychiatric condition[;] and is homeless, unable to find someplace to live.

(Tr. at 8.) To support his opinions, Dr. Bates recounted P.A.'s criminal charges, which she acquired "because she was homeless, and so, in seeking some shelter from the elements, she would go into a business, basically refuse to leave, and the police would be called." *Id.* at 9. Dr. Bates also spoke of P.A.'s aggression toward her roommate, where she "[t]wist[ed] a nightgown or some kind of garment around the woman's neck," and P.A.'s pattern of paranoid behavior. *Id.* at 10.

{¶ 15} Based on Dr. Bates' testimony, we conclude that the record contains competent, credible evidence that clearly and convincingly establishes that P.A. is a mentally ill person subject to court order. Consequently, the trial court did not err in involuntarily committing her to Twin Valley for mental health treatment. We thus overrule P.A.'s first assignment of error.

{¶ 16} By her second assignment of error, P.A. argues that the trial court erred in authorizing Twin Valley to medicate her against her wishes. P.A., however, fails to advance any argument in support of her second assignment of error. An appellant has the duty to construct the arguments necessary to support the assignments of error; an appellate court will not construct those arguments for the appellant. *Bond v. Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16. If an appellant fails to fulfill its duty, the appellate court may disregard the unsupported assignment of error. App.R. 12(A)(2). While we could decline to decide P.A.'s second assignment of error, we will address it in the interest of justice.

{¶ 17} A probate court may issue an order permitting the administration of psychotropic medication against the wishes of an involuntarily committed mentally ill person if it finds by clear and convincing evidence that: (1) the person does not have the capacity to give or withhold informed consent regarding his or her treatment; (2) it is in the person's best interest to take the medication, i.e., the benefits of the medication outweigh the side effects; and (3) no less intrusive treatment will be as effective in treating the mental illness. *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176 (2000), paragraph six of the syllabus.

{¶ 18} In this case, Dr. Bates and Dr. Davis testified that P.A. lacked the capacity to make informed medical treatment decisions, and that the benefits of medicating P.A. with antipsychotic drugs outweighed the risks of the treatment. Dr. Davis opined that P.A. had a severe mental illness that caused paranoid delusions and perception problems. P.A.'s mental illness prevented her from seeing that she was mentally ill and in need of treatment, and interfered with her ability to process treatment information. Dr. Davis predicted that, after receiving antipsychotic medication for four to six weeks, P.A. would recover sufficiently for discharge from Twin Valley. Neither Dr. Bates nor Dr. Davis was aware of any less intrusive treatment alternative.

{¶ 19} Based on Dr. Bates' and Dr. Davis' testimony, we conclude that competent, credible evidence supports the trial court's conclusion that the evidence clearly and convincingly established that P.A. should be forcibly medicated.  Accordingly, we overrule P.A.'s second assignment of error.

{¶ 20} For the foregoing reasons, we overrule both of P.A.'s assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

————————————