[Cite as *In re N.E.*, 2022-Ohio-1184.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: N.E. | : | APPEAL NO. C-210181 |
| | | TRIAL NO. MI-2020000613 |
| | : | |
| | : | *O P I N I O N.* |


Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 8, 2022


*Faulkner & Tepe, L.L.P.,* and *A. Norman Aubin*, for Applicant-Appellee, Hamilton County Mental Health and Recovery Services Board,

*Michael J. Trapp*, for Respondent-Appellant, N.E.

**CROUSE, Judge.**

{¶1}   Respondent-appellant N.E. appeals the judgment of the Hamilton County Probate Court finding that he is a mentally ill person subject to hospitalization and treatment by court order.  In one assignment of error, appellant argues that the probate court lacked jurisdiction to enter that judgment.  For the reasons that follow, we overrule this assignment of error and affirm the judgment of the probate court.

*Factual Background*

{¶2}   On August 18, 2020, North College Hill Police brought appellant to the University of Cincinnati Medical Center Psychiatric Emergency Services for an emergency hospitalization.

{¶3}   The following day, the hospital filed an "Application for Emergency Admission" in the probate court. The application included a written statement by the responding police officer, which provided as follows:

Subject made incoherrent [sic], unintelligible statements throughout the night over three separate police contacts. Statements made include, "I have died six times," among other similar statements. Subject was yelling in the street, causing people to be alarmed and call 911.

{¶4}   Included in the application was a statement of observation by Dr. Christopher P. Marett, M.D.  Dr. Marett wrote that appellant "has symptoms of mania. He has had concerning behavior leading to several police calls. Also has apparently destroyed mother's house recently. Needs hospitalization for safety and stabilization."

{¶5}   Also filed with the probate court was an affidavit of mental illness, signed by Dr. Marett, and a motion for forced medication, signed by Dr. Bryan J. Griffin, D.O., appellant's treating physician.

{¶6}   The court issued a temporary order of detention, and set a hearing before a magistrate on both matters for August 21, 2020.

{¶7}   At the hearing, Dr. Cyma Khalily, the court-appointed expert, testified about the mental-status exam she performed on appellant. Two witnesses for appellant also testified.  Following this testimony, the magistrate found appellant to be mentally ill subject to hospitalization, with the least restrictive setting determined to be the University of Cincinnati Medical Center – Ridgeway ("UC Ridgeway").  The court then proceeded to the forced-medication portion of the hearing.  After hearing testimony from Dr. Griffin, the magistrate granted the motion for forced medication.

{¶8}   On August 25, 2020, appellant filed objections to the magistrate's decision.  On September 8, 2020, before the hearing on the objections, appellant was discharged from UC Ridgeway.[1]  The probate court overruled the objections and adopted the magistrate's decision.  Appellant timely filed a notice of appeal.  In a sole assignment of error, appellant contends that the probate court lacked jurisdiction, and that the proceedings were therefore never properly commenced, because the affidavit failed to establish probable cause that he was a mentally ill person subject to court order.

---

[1] While appellant concedes his discharge from UC Ridgeway moots any claim for relief on the forced-medication issue, he argues—and we agree—that appellant's discharge does not moot his claim to vacate the probate court's judgment that he is a mentally ill person because "[t]he issue concerning continuing collateral disability must still be determined." *See In re K.W.*, 10th Dist. Franklin No. 06AP-943, 2007-Ohio-699 ¶ 9, quoting *In re Klepper*, 49 Ohio St.2d 211, 212, 361 N.E.2d 427 (1977). Ohio courts have found the stigma of being declared mentally ill severe enough to be considered a collateral disability. *In re K.W.* at ¶ 9, quoting *In re Smith*, 4th Dist. Athens Nos. 92CA1561 and 92CA1568, 1993 Ohio App. LEXIS 5057 (Sep. 29, 1993); *see In re D.B.*, 10th Dist. Franklin No. 14AP-44, 2014-Ohio-1464, ¶ 7.

### *The Mental-Illness Affidavit*

**{¶9}** There are two involuntary commitment procedures contemplated in R.C. Chapter 5122: emergency hospitalization, pursuant to R.C. 5122.10, and nonemergency hospitalization, pursuant to R.C. 5122.11. In an emergency hospitalization, pursuant to R.C. 5122.10(A)(1), a police officer or other individual designated by the statute:

> who has reason to believe that a person is a mentally ill person subject
> to court order and represents a substantial risk of physical harm to self
> or others if allowed to remain at liberty pending examination may take
> the person into custody and may immediately transport the person to a
> hospital[.][2]

**{¶10}** The transporting individual must provide a written statement to the hospital detailing "the circumstances under which such person was taken into custody and the reasons for the belief" that the person needs to be hospitalized. R.C. 5122.10(B).

**{¶11}** Once at the hospital, the hospital staff must examine the individual within 24 hours. R.C. 5122.10(E). After the exam, if the chief clinical officer "believes

---

[2] R.C. 5122.10(A)(1) also authorizes the following individuals to transport people believed to be mentally ill to a hospital for treatment:
> (a) A psychiatrist;
> (b) A licensed physician;
> (c) A licensed clinical psychologist;
> (d) A clinical nurse specialist who is certified as a psychiatric-mental health CNS
> by the American nurses credentialing center;
> (e) A certified nurse practitioner who is certified as a psychiatric-mental health NP
> by the American nurses credentialing center;
> (f) A health officer;
> (g) A parole officer;
> (h) A police officer;
> (i) A sheriff.

that the person is not a mentally ill person subject to court order, the chief clinical officer shall release or discharge the person immediately unless a court has issued a temporary order of detention." *Id.* Conversely, if the chief clinical officer believes the person is a mentally ill person subject to court order, he or she "may detain the person for not more than three court days following the day of the examination and during such period admit the person as a voluntary patient * * * or file an affidavit under [R.C.] 5122.11." *Id.*

{¶12} R.C. 5122.11 sets forth two requirements for the affidavit:

The affidavit shall contain an allegation setting forth the specific category or categories under division (B) of section 5122.01 of the Revised Code upon which the jurisdiction of the court is based and a statement of alleged facts sufficient to indicate probable cause to believe that the person is a mentally ill person subject to court order.

R.C. 5122.11.

{¶13} When "an affidavit is properly filed in an emergency commitment situation, so that the jurisdiction of the court is correctly invoked, the commitment procedure becomes similar to a non-emergency procedure, except that the person is already in custody at the hospital." *In re Miller,* 63 Ohio St.3d 99, 105, 585 N.E.2d 396 (1992).

{¶14} In the affidavit, Dr. Marett alleged that appellant was mentally ill under both R.C. 5122.01(B)(3) and (4), such that appellant was "a mentally ill person, who because of the person's illness:"

(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person

5

is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;

(4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person[.]

R.C. 5122.01(B)(3) and (4). The statute defines "mental illness" as "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." R.C. 5122.01(A).

{¶15} In support of these allegations, Dr. Marett included the following facts in the affidavit:

[Appellant] * * * is a 38 year old male with a history of bipolar disorder who was brought to the hospital by police. He has been off his medication for several months. He was causing problems in the community and the police were called to his home three times in one day. He is grandiose, labile, pressured. He is grandiose, and voiced ideas to police her [sic] "died six times." He destroyed property at his moms [sic] home. He has substantial disorders of thought, mood, and perception. In prior admission we had to get court ordered medications to treat him. He is very clear that he will not take any medications unless they are court ordered.

His creating a disturbance in the community and destroying property at his moms [sic] home are a direct result of mental illness. The least restrictive setting for his care is University of Cincinnati Medical Center.

### *Sole Assignment of Error*

{¶16} In his sole assignment of error, appellant argues that the trial court lacked jurisdiction to find him a mentally ill person subject to hospitalization and treatment by court order because Dr. Marett's affidavit fails to set forth facts establishing probable cause to believe appellant is a mentally ill person subject to hospitalization by court order. He contends that because the court did not have jurisdiction, the involuntary commitment proceedings were never properly commenced, and the court's judgment should be reversed and this cause remanded with instructions to vacate the order.

{¶17} The Ohio Supreme Court has held that without facts demonstrating probable cause, an affidavit is facially invalid, and "the jurisdiction of a court may not be invoked." *In re Mental Illness of Boggs*, 50 Ohio St.3d 217, 221, 553 N.E.2d 676 (1990). In *Boggs*, the court found an affidavit filed by appellant's former spouse failed to establish probable cause where the affidavit alleged mental illness under R.C. 5122.01(B)(4) and included allegations that appellant sent letters with "delusional content" in them, was hyper-religious, and had a history of refusing to take her medication. *Id.* at 220. The court stated that the affidavit lacked evidence to substantiate the claims, and that the:

allegations do not make it probable, or more likely than not, that appellant suffers from a "mental illness"; that appellant would benefit from hospitalization; that appellant is in need of treatment; or that

7

appellant's activities create a grave and imminent risk to the substantial

rights of herself or others * * * .

*Id.* at 220.

{¶18} The court confronted a similar issue in *In re Miller*, 63 Ohio St.3d 99, 105, 585 N.E.2d 396 (1992). In that case, the affidavit alleged mental illness under R.C. 5122.11(B)(3) and (4), and stated:

Mr. Kenneth Miller is a 38 year old Caucasian, married male, admitted

on an emergency basis on November 18, 1989. The patient has been

progressively confused, delusional, and paranoid. His sense of reality is

altered, grandiouse [sic] and at times, out of touch with reality.

*Id.* at 106. The court found these statements to be conclusory and held the affidavit was insufficient under R.C. 5122.11. *Id.* It stated that the affidavit "must set forth facts which describe specific actions, incidents or events." *Id.* The court held, "[b]ecause the affidavit was deficient, no probable cause existed to invoke the jurisdiction of the probate court." *Id.*, citing *Boggs* at 221.

{¶19} Appellant argues that the affidavit filed in his case is deficient for three main reasons. First, appellant argues that there are no facts in the affidavit to provide probable cause to believe that he was a mentally ill person within the meaning of R.C. 5122.01(B)(3). He contends that the allegations of property damage, repeated police calls, and community disturbance do not establish that he was unable to care for his basic physical needs. Second, appellant argues that the facts alleged in the affidavit do not establish that his behavior created a "grave and imminent risk to the substantial rights of others or the [appellant]" and therefore do not establish probable cause to believe that appellant was a mentally ill person within the meaning of R.C.

8

5122.01(B)(4). He contends that the allegations offered in support of this point are vague, without context, and fail to show a risk to the substantial rights of others. Third, appellant argues that Dr. Marett's statements in the affidavit are conclusory, and that Dr. Marett failed to connect the facts alleged to his opinion about appellant's mental state.

{¶20} Appellant claims that the affidavit in this case resembles the affidavit in *In re Mitterbach*, 8th Dist. Cuyahoga No. 89200, 2007-Ohio-6489. In *Mitterbach,* the appellant went to a hospital for a nonpsychiatric medical issue. *Id.* at ¶ 2. While in the hospital's care, the hospital staff became concerned with her mental health. *Id.* The treating physician filed an affidavit pursuant to R.C. 5122.11 alleging appellant was mentally ill under both R.C. 5122.11(B)(3) and (4). *Id.* at ¶ 3. The affidavit stated:

> [Appellant] has extensive history of psychiatric illness. She is [illegible word] delusional. Speech is rambling and speech is disorganized as well. Pt has been [illegible word] non-compliant with meds. Needs [illegible word] [illegible word] treatment as [illegible word].

*Id.* at ¶ 2. On appeal, the court held that the statement of facts was insufficient, and reversed the judgment of the probate court with instructions to vacate its finding that appellant was mentally ill subject to court order. *Id.* at ¶ 16-18. The court stated:

> The affidavit does not substantiate the extensive history of psychiatric illness. Nor does it indicate how or when Mitterbach was non-compliant with her medications, or if and when she was prescribed medications. The affidavit does not indicate how she was delusional or what her delusions were about. The only clear fact alleged is that her speech was rambling and disorganized. Nevertheless, this fact does not

9

substantiate a claim that Mitterbach represents a substantial and immediate risk of serious physical impairment or injury to herself [or] that Mitterbach is unable to provide for and is not providing for her basic physical needs. Finally, there is nothing to indicate her behavior creates a grave and imminent risk to the substantial rights of others or herself.

*Id.* at ¶ 15.

**{¶21}** While we agree that the affidavit in this case could be more detailed, we find that it was sufficient to establish probable cause to believe that appellant is a mentally ill person who because of his illness would benefit from treatment for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to the substantial rights of others or himself.

**{¶22}** Dr. Marett's affidavit stated that appellant destroyed property at his mother's home and caused problems in the community to the point where the police were called to his home three times in one day. The affidavit described the delusions that appellant voiced to the police that "he died six times."

**{¶23}** The affidavit further stated that appellant has a history of bipolar disorder and failed to take his medication for several months. It substantiated the prescription-compliance allegations by discussing previous court-ordered treatment and continued refusal to take medication absent a court order. Dr. Marett indicated his belief that appellant's behavior was a "direct result of mental illness."

**{¶24}** An individual's lack of insight into his mental illness and reality have been held to be evidence of behavior that creates a grave and imminent risk to the substantial rights of himself or others. *See In re C.J.*, 12th Dist. Butler No. CA2019-01-

013, 2019-Ohio-4403, ¶ 22 (affirming the probate court's finding that appellant was a mentally ill person under R.C. 5122.01(B)(4) because the record showed that appellant refused to openly discuss his mental illness, disputed his psychiatrists' working diagnosis, refused to fully engage in the prescribed treatment plan, and demonstrated impaired judgment and unreliable insight into reality).

{¶25} Unlike *Mitterbach*, where the affidavit included only clinical conclusions and diagnoses without any facts, the affidavit in this case included facts, detailing specific events, which led to appellant's emergency hospitalization. Overall, we find that the affidavit included sufficient factual allegations to establish probable cause pursuant to R.C. 5122.11.

### *Conclusion*

{¶26} We hold the mental-illness affidavit filed against appellant was sufficient to establish probable cause that appellant was a mentally ill person subject to hospitalization by court order under R.C. 5122.01(B)(4). Therefore, the probate court had jurisdiction over the matter. We overrule appellant's sole assignment of error and affirm the judgment of the probate court.

Judgment affirmed.

**MYERS, P. J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.