[Cite as *In re R.T.*, 2013-Ohio-4886.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| R.T., | : | No. 13AP-291 |
| | | (P.C. No. MI-19885) |
| Respondent-Appellant. | : | |
| | | (REGULAR CALENDAR) |
| | : | |

---

# D E C I S I O N

## Rendered on November 5, 2013

---

*R.T.*, pro se.

*J. Michael Evans*, for Franklin County ADAMH Board.

---

**APPEAL from the Franklin County Court of Common Pleas, Probate Division**

T. BRYANT, J.

{¶1} Respondent-appellant, R.T., appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling objections and adopting the magistrate's reports and entries dated March 7 and March 14, 2013. Appellee, Franklin County Alcohol, Drug Addiction and Mental Health Services Board ("ADAMH Board"), filed a motion to dismiss. For the following reasons, we deny the motion to dismiss, and affirm the trial court's decision.

{¶2} On February 28, 2013, Lora Ford, LSW, filed an affidavit of mental illness regarding appellant pursuant to R.C. 5122.11.[1] That day, an order of detention was filed and appellant was taken to Riverside Methodist Hospital. On March 6, 2013, a hearing was held on the affidavit of mental illness. On March 7, 2013, a magistrate's report and entry was filed finding appellant to be a mentally ill person subject to hospitalization.

---

[1] The facts are taken mostly from the trial court judgment entry.

{¶3} On March 7, 2013, an application to authorize antipsychotic medication was filed and a hearing was held on March 13, 2013. On March 14, 2013, a magistrate's report and entry was filed authorizing the administration of antipsychotic medication to appellant.

{¶4} Appellant filed a general objection to both the March 7 and March 14, 2013 magistrate's reports and entries. On March 28, 2013, the trial court held a hearing on the objection and overruled the objection on March 29, 2013.

{¶5} Acting pro se, appellant filed a timely notice of appeal and raised the following assignments of error:

> I. The First assignment of error of the March 28th probate court objection hearing decision is when the court made the error of upholding the magistrate[']s decision.
>
> II. The second assignment of error of the March 28th probate court objection hearing decision is when the trial court's decision was based upon inadmissible evidence.
>
> III. The third assignment of error of the March 28th probate court objection hearing decision is when [the] trial court made the error by forcing medication on the appellant.
>
> IV. The fourth assignment of error of the March 28th probate court objection hearing decision is when the trial court made the error by precluding appellant from introducing evidence at her hearing, as guaranteed by Revised [C]ode 5122.15.

{¶6} Preliminarily, we note that appellant was present for oral argument before this court and has been released from the hospital and the matter appears to be moot. "Actions are moot when ' "they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." ' " *In re K.W.*, 10th Dist. No. 06AP-943, 2007-Ohio-699, ¶ 8, quoting *Lingo v. Ohio Cent. RR., Inc.*, 10th Dist. No. 05AP-206, 2006-Ohio-2268, ¶ 20, quoting *Grove City v. Clark*, 10th Dist. No. 01AP-1369, 2002-Ohio-4549, ¶ 11. However, this matter is not moot. An adjudication by the probate court of mental illness carries a stigma that can have a significant impact and adverse consequences on the individual's life. *In re Miller*, 63 Ohio St.3d 99, 108 (1992), citing *Addington v. Texas*, 441 U.S. 418, 425-26 (1979). *See also K.W.*; *In re P.H.*, 10th Dist. No. 96APF12-1729 (July 10, 1997). Thus, we address the merits of her appeal.

{¶7}    We also note that the brief appellant filed with this court is very difficult to decipher and does not comply with App.R. 16 in many respects, including a lack of reference to the places in the record where each error is reflected (App.R. 16(A)(3)), no statement of the issues (App.R. 16(A)(4)), and the supporting argument does not clearly specify the contentions pertaining to each assignment of error (App.R. 16(A)(7)).  We are free to disregard appellant's assignments of error under these circumstances.  *See* App.R. 12(A)(2).  However, in the interest of justice, we will address what we discern to be her assignments of error.

{¶8}    By her first assignment of error, appellant contends that the trial court erred in adopting the March 7, 2013, magistrate's report and entry because she alleges that it was based on pending municipal court charges.

{¶9}    When a person faces involuntary commitment to a mental hospital, "the individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill." *Miller* at 101.  R.C. Chapter 5122 sets forth the procedures for committing a person to a mental hospital.   "When commitment is against a person's will, it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection." *Id.*

{¶10} Non-emergency hospitalization under R.C. Chapter 5122 is commenced with the filing of an affidavit with the court setting forth specifics under R.C. 5122.01(B) upon which the court's jurisdiction is based.  The affidavit must contain facts sufficient to indicate probable cause that an individual is a mentally ill person subject to hospitalization by court order.   R.C. 5122.01(B) sets forth the criteria defining "[m]entally ill person subject to hospitalization by court order."  The court must conduct a hearing to determine whether the individual is a mentally ill person subject to hospitalization.   The statute provides a three-part definition of "mentally ill person subject to hospitalization by court order," which the state must demonstrate to have a person involuntarily committed.   *State v. Welch*, 125 Ohio App.3d 49, 52 (11th Dist.1997).  R.C. 5122.01(A) provides the first two parts, as follows:

> [1.] "Mental illness" means a substantial disorder of thought, mood, perception, orientation, or memory that [2.] grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

{¶11}  The third part of the definition is found in R.C. 5122.01(B), and requires a finding that the individual:

> (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
>
> (4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.

{¶12}  Thus, the state must prove that a defendant has a substantial mental disorder, that the mental disorder grossly impairs his functioning, and the defendant must be hospitalized for one of the four reasons provided in R.C. 5122.01(B).  Each part of the definition must be established by clear and convincing evidence.  R.C. 5122.15(H). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

{¶13}  In *In re Burton*, 11 Ohio St.3d 147, 149 (1984), the Supreme Court of Ohio established a totality of the circumstances test to determine whether a person is subject

to hospitalization pursuant to R.C. 5122.01(B). The factors the probate court is to consider include, but are not limited to:

> (1) [W]hether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

*Burton*, at 149-50.

{¶14} The magistrate's March 7, 2013 report and entry found appellant to be a mentally ill person subject to hospitalization. The report was based on an affidavit and a hearing held on March 6, 2013. The affidavit was filed by Lora Ford, LSW, concerning appellant. It provided the following significant points:

> [Respondent] [R]epresents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> * * *
>
> On 02/07/2013, client went to her neighbor's house and opened up his screen door. Client had 2 knives and a hand saw and started swinging the weapons at the neighbor. * * * Since being released pending her trial, client made numerous phone calls to Columbus Police Department asserting that one of the officers that has been out to her home this month "should be dead and his family set on fire". This statement was made on 02/24/2013. She has also stated that this officer needs "a bullet in his head". * * * This information was provided by the Columbus Police Department based on the 11 runs to the home this month. * * * Per the neighbor's

[sic], client is seen pacing on the sidewalks on their street carrying knives. She can be seen talking to herself and will respond as if someone not present is speaking to her. Neighbor's [sic] further report that client's daughter has stated that client hears voices. Client is also banging on the walls of her apartment and can be heard screaming for no apparent reason.

{¶15} At the hearing, William Bates, M.D., a psychiatrist, testified as to his expert opinion regarding appellant. Dr. Bates testified that appellant has a schizo-affective disorder and numerous delusions. As a result of her persecutory delusions, she feels various people follow her and want to kill, rape, and poison or harass her. She confronted a neighbor earlier that month with knives and weapons because she believed he wanted to rape her. Her schizo-affective disorder is a disorder of thought and mind and is substantial. She represents a substantial risk to others because she is in a state of fear. Appellant made threatening phone calls to the police and has been walking around the neighborhood with weapons. Dr. Bates testified that appellant is not able to function in society in a meaningful way in her present condition and the least restrictive environment is a psychiatric hospital. His ultimate conclusion was that appellant is a mentally ill person and needs to be in a psychiatric facility.

{¶16} Under the totality of the circumstances, the testimony of Dr. Bates presents clear and convincing evidence to support the trial court's finding that appellant is a mentally ill person, who, because of her illness, represents a substantial risk of physical harm to others under R.C. 5122.01(B)(2). Appellant, as a result of her mental illness, entered a neighbor's home and threatened him with knives and a saw. Appellant repeatedly made threatening phone calls to police officers and walked the neighborhood streets carrying weapons. The trial court had clear and convincing evidence that she has a substantial mental disorder, that the mental disorder grossly impairs her functioning and appellant must be hospitalized because her behavior represents a substantial risk of physical harm to others that satisfies R.C. 5122.01(B)(2). Appellant's first assignment of error is overruled.

{¶17} By her second assignment of error, appellant contends the trial court erred in adopting the magistrate's March 7 report and entry because the magistrate relied on inadmissible expert testimony. Appellant argues that the testimony of Dr. Bates was inadmissible because appellant's medical records were not available to the court.

Appellant's counsel filed a motion in limine requesting that the court limit the testimony of Dr. Bates to his personal observations. However, counsel withdrew the motion at the conclusion of the hearing because it was not necessary based on the testimony.

{¶18} Despite appellant's contentions, the trial court did not rely on inadmissible evidence. Pursuant to Evid.R. 703, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Thus, the medical records did not need to be admitted in this case because the expert testified based upon facts and data he perceived. Appellant's second assignment of error is overruled.

{¶19} By her third assignment of error, appellant contends that the trial court erred in adopting the March 14, 2013 magistrate's report and entry because the magistrate did not acknowledge the power of attorney appellant had signed the day before the hearing. Appellant also seems to be arguing that an involuntarily committed patient cannot be forcibly medicated if that person has the capacity to make an informed decision.

{¶20} When the hearing began, appellant's counsel informed the court that appellant's daughter, Stephanie, was present in the courtroom and had a health care power of attorney, signed by appellant the previous day. Appellant's counsel made the magistrate aware that even after executing the health care power of attorney, appellant refused her medication the previous day. The magistrate found the health care power of attorney ineffective for purposes of the hearing because appellant had already been determined by clear and convincing evidence that she has a substantial mental disorder, that the mental disorder grossly impairs her functioning and that she must be hospitalized because her behavior represents a substantial risk of physical harm to others. Given that adjudication, her ability to enter into a health care power of attorney after that adjudication was compromised. *See Testa v. Roberts*, 44 Ohio App.3d 161, 164 (6th Dist.1988) ("The creation of a power of attorney requires that the principal be mentally competent at the time the power is executed. * * * The test to be used to determine mental capacity is the ability of the principal to understand the nature, scope and the extent of the business he is about to transact."). Thus, the magistrate did not err in not acknowledging the power of attorney appellant had signed the day before the hearing.

{¶21} Appellant also cites to *Rogers v. Okin*, 738 F.2d 1 (1st Cir.1984) and *Rennie v. Klein*, 720 F.2d 266 (3rd Cir.1983). The citations seem to be in support of an argument that an involuntarily committed mentally ill person has a constitutional right to refuse the administration of antipsychotic drugs if that person has the capacity to make informed treatment decisions and does not pose an imminent harm to himself/herself or others. However, those cases are distinguishable from these facts.

{¶22} In *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176 (2000), the Supreme Court of Ohio determined the circumstances under which an involuntarily committed mentally ill patient may be forcibly medicated and the necessary due process. The Supreme Court of Ohio set forth in *Steele*: "[a] physician may order the forced medication of an involuntarily committed mentally ill patient with antipsychotic drugs when the physician determines that (1) the patient presents an imminent danger of harm to himself/herself or others, (2) there are no less intrusive means of avoiding the threatened harm, and (3) the medication to be administered is medically appropriate for the patient." *Id.* at paragraph three of the syllabus.

{¶23} In this case, the *Steele* requirements were met. Dallas Erdman, M.D., a qualified psychiatrist who was appellant's treating physician testified and stated that appellant did not have the current capacity to make medical decisions. She had an inability to understand and have any rational, reasonable conversations about her illness. He explained the treatment regimen and testified that he was unaware of any lesser treatment alternatives and that the benefits outweighed the risks. He stated that without treatment, he had "significant reservations" about discharging her into the community because of her behavior presenting a risk to her and others' safety. (Mar. 13, 2013 Tr. 21.) John Morcos, M.D., also testified. He agreed that appellant did not have the capacity to make informed consent regarding medication and he believed the proposed treatment plan was appropriate. He was unaware of any lesser intrusive treatment alternatives and the benefits outweighed the risks. Thus, the testimony established the *Steele* requirements and the trial court did not err in adopting the magistrate's report and entry authorizing forced medication. Appellant's third assignment of error is overruled.

{¶24} In her fourth assignment of error, appellant contends that the magistrate erred during the March 6, 2013 hearing in precluding appellant from introducing the testimony of supportive witnesses. Appellant's complaint is that her attorney did not

have her daughter, Stephanie Thomas, and a neighbor testify. However, the attorney explained to the magistrate that he had spoken to two gentlemen, one who indicated he was a neighbor, but the neighbor's testimony was relevant to appellant's pending case in municipal court, not to this pending case in probate court. Appellant's counsel found no need to call the witnesses that appellant claims were excluded because their testimony was irrelevant to the proceedings. There is no duty to call witnesses to present irrelevant testimony. Appellant's fourth assignment of error is overruled.

{¶25} Appellee filed a motion to dismiss in the case, contending that a proper notice of appeal was not filed and that appellant's daughter, Stephanie Thomas, appears to have filed the appeal on behalf of her mother. Since Thomas is not a qualified attorney or her mother's guardian, she could not represent her mother. However, the brief was signed by R.T. and appellant appeared at oral argument before this court. This court has no reason to think other than appellant filed the appeal pro se. Appellee's motion to dismiss is denied.

{¶26} For the foregoing reasons, appellant's four assignments of error are overruled, appellee's motion to dismiss is denied, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is affirmed.

*Motion to dismiss denied;*
*judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____