[Cite as *In re R.T.*, 2019-Ohio-618.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In re:  R. T.,                                  :                    No. 17AP-288
                                                                  (Prob. No. MI-025404)
                 (Appellant).              :

                                                :                  (REGULAR CALENDAR)

                                                :

D E C I S I O N

Rendered on February 21, 2019

**On brief:** *R.T.*, pro se. **Argued:** *R.T.*

**On brief:** *J. Michael Evans* for appellee Franklin County
Alcohol, Drug Abuse, and Mental Health Board. **Argued:**
*J. Michael Evans*

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

BRUNNER, J.

{¶ 1}  Respondent-appellant, R.T., appeals from a judgment of the Franklin County
Court of Common Pleas, Probate Division, committing appellant to the Franklin County
Alcohol, Drug Abuse, and Mental Health Board ("Franklin County ADAMH Board") for a
period not to exceed 90 days and authorizing the forced administration of psychotropic
medication.  For the following reasons, we affirm the judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On February 16, 2016, appellant was charged with criminal trespass and
aggravated menacing, in connection with an incident where appellant threatened to shoot
and kill Wal-Mart employees.  The Franklin County Municipal Court found appellant
incompetent to stand trial on the criminal charges.  Appellant was sent to Twin Valley
Behavioral Healthcare ("TVBH") for competency restoration.  On February 24, 2017,
Christopher Boyd filed an affidavit of mental illness in the probate court regarding
appellant pursuant to R.C. 5122.11.  Boyd is the assistant manager of the specialized docket
of the Franklin County Municipal Court, where appellant was held after the Wal-Mart

incident. On February 24, 2017, the municipal court filed an entry dismissing the criminal complaint against appellant because the court found there was not a substantial probability that appellant would become competent to stand trial within the time allotted by law. On February 24, 2017, Peter Iverson, M.D., treating psychiatrist, and Ann K. Morrison, chief clinical officer, on behalf of TVBH, filed an application to authorize forced psychotropic medications.

{¶ 3} On March 1, 2017, a magistrate[1] held a hearing on the affidavit of mental illness and a hearing on the application to authorize forced psychotropic medications. On that same day, the magistrate issued an order finding appellant to be a mentally ill person subject to hospitalization. On March 20, 2017, appellant filed an untimely pro se objection that the trial court addressed in the interest of justice. The trial court appointed an attorney for appellant and held a hearing on the objection. During the hearing, appellant's attorney clarified appellant's objection. On March 24, 2017, the trial court filed a judgment entry overruling appellant's objection and adopting the decision and orders of the magistrate. Appellant was discharged from TVBH on April 11, 2017.

## II. ASSIGNMENT OF ERROR

{¶ 4} Appellant filed a timely pro se notice of appeal and raised the following assignment of error for our review:

> THE LOWER COURT ERRORED [sic] IN VIOLATING 5122.01, 5122.11, AND 5122.10 BY THAT OF FORCING APPELLANT TO STAY LONGER IN TWIN VALLEY AFTER SERVING THEIR CRIMINAL SENTENCING AND USING THE UNCONVICTED CRIMINAL SENTENCEING [sic] ALREADY SERVED AS A REASON TO MAKE APPELLANT TAKE FORCED MEDICATION.

## III. DISCUSSION

{¶ 5} Initially, we note that the record indicates that appellant was discharged from TVBH on April 11, 2017 and was present for oral argument before this Court. While the action may appear to be moot, this Court has previously recognized that such an action is not moot. "An adjudication by the probate court of mental illness carries a stigma that can have a significant impact and adverse consequences on the individual's life." *In re R.T.,*

---

[1] R.C. Chapter 5122 refers to a referee rather than magistrate but we shall use "referee" and "magistrate" interchangeably.

10th Dist. No. 13AP-291, 2013-Ohio-4886, ¶ 6, citing *In re Miller*, 63 Ohio St.3d 99, 108 (1992), citing *Addington v. Texas*, 441 U.S. 418, 425-26 (1979); *see also In re D.B.*, 10th Dist. No. 14AP-44, 2014-Ohio-1464, ¶ 7.

{¶ 6} The brief appellant filed with this Court makes no supporting argument regarding her assignment of error. App.R. 12(A)(2) provides that we are free to disregard appellant's assignments of error under these circumstances. However, we will address what we discern are the issues raised by appellant's assignment of error.

{¶ 7} By her assignment of error, appellant seems to contend that the decision of the trial court finding appellant to be a mentally ill person subject to hospitalization by court order and its decision concerning the court's forced medication order were against the manifest weight of the evidence.

{¶ 8} R.C. Chapter 5122 sets forth the procedures for committing a person to a mental hospital. "When commitment is against a person's will, it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection." *In re Miller* at 101. When a person faces involuntary commitment to a mental hospital "the individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill." *Id.*

{¶ 9} The non-emergency hospitalization under R.C. Chapter 5122 begins with the filing of an affidavit with the court setting forth specifics under R.C. 5122.01(B) providing the basis for the court's jurisdiction. The affidavit must contain sufficient facts to indicate probable cause that an individual is a mentally ill person subject to hospitalization by court order. R.C. 5122.01(B) defines the "[m]entally ill person subject to hospitalization by court order."[2] The court must conduct a hearing to determine whether the individual is a mentally ill person subject to hospitalization and the statute provides a three-part test for involuntary commitment. *State v. Welch*, 125 Ohio App.3d 49, 52 (11th Dist.1997). The first two parts of the test are provided in R.C. 5122.01(A), as follows:

> "Mental illness" means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs

---

[2] In 2014, the General Assembly amended R.C. 5122.01(B) and deleted "hospitalization by" following "person subject to" in the introductory language of (B); deleted "in a hospital" in (B)(4); added (B)(5) and (Y) and rewrote (V). A person who only meets the criteria in R.C. 5122.01(B)(5)(a) is not subject to hospitalization. R.C. 5122.01(B)(5)(b).

judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

{¶ 10} The third part of the definition is found in R.C. 5122.01(B) and requires a finding that the individual:

(1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted harm;

(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;

(4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.

{¶ 11} Accordingly, for the trial court to find an individual is a mentally ill person subject to hospitalization there must be sufficient evidence that the individual has a substantial mental disorder that the mental disorder grossly impairs his/her functioning, and the individual must be hospitalized for one of the four reasons provided in R.C. 5122.01(B). Each part of the definition must be established by clear and convincing evidence. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite

degree of proof." *State v. Scheibel*, 55 Ohio St.3d 71, 74 (1990). However, judgments that are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court and the appellate court should not substitute its judgment for the trial court when there exists competent and credible evidence supporting the trial court's findings of fact and conclusions of law. *Id.*

{¶ 12} The Supreme Court of Ohio established a totality of the circumstances test to determine whether a person is subject to hospitalization pursuant to R.C. 5122.01(B) in *In re Burton*, 11 Ohio St.3d 147, 149 (1984). The trial court should consider the following factors, including, but not limited to:

> (1) [W]hether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

*In re Burton* at 149-50.

{¶ 13} The magistrate's March 2, 2017 order of commitment was based on the magistrate's finding appellant to be a mentally ill person subject to hospitalization. The order was based on an affidavit and a hearing. The affidavit was filed by Christopher Boyd, the assistant manager of the specialized docket of the Franklin County Municipal Court, where appellant was held after the Wal-Mmart incident. The affidavit provided the following significant points:

> [Appellant] was found incompetent to stand trial and unrestorable despite attempts at in-patient restoration. [Appellant] was charged with criminal trespass and aggravated menacing after she threatened to shoot and kill employees at a Wal-Mart store. [Appellant] suffers from a Delusional

> Disorder and is unwilling to accept medications or treatment at this time for her condition, despite already being in TVBH. [Appellant] presents with loose disorganized thoughts. She is acutely delusional and is unable to have a sustained logical conversation. She has persecutory and grandiose ideation. She reports the belief that law enforcement are repeatedly romantically pursuing her as well as claims about being the target of various assassination attempts. She is paranoid and believes others including her attorney are plotting against her. Her behavior is described as intrusive and largely uncooperative. [Appellant] at times cackles inappropriately. [Appellant] is in need of continued hospitalization and may benefit from a forced medication order due to her unwillingness to accept voluntary treatment for her psychiatric illness. [Appellant] continues to display behaviors based on her delusional beliefs which poses a serious risk of harm to herself and the community. Without treatment, [appellant] is likely to engage in similar dangerous behavior like that which led to her involvement with the Court system. [Appellant] is in need of a thorough risk assessment as well as, appropriate linkage to community resources that can assist in managing her condition upon discharge.

(Feb. 24, 2017 Aff. of Mental Illness.)

{¶ 14} At the hearing, Peter Iverson, M.D., a psychiatrist at TVBH, testified that he was the attending physician for appellant at TVBH. Dr. Iverson testified, in his opinion, based upon a reasonable degree of psychiatric certainty, that appellant's current mental condition consists of schizophrenia that rises to the level of a substantial disorder of mood and thought, especially thought, memory, and perception. Dr. Iverson believes appellant's disorder grossly impairs her judgment. He believes that as a result of appellant's schizophrenia and paranoia, she represents a substantial harm to herself and others, and inpatient hospitalization is the least restricted setting consistent with her current treatment needs. Dr. Iverson explained that appellant's thoughts are paranoid, and she believes the staff is trying to kill her on a daily basis. Her impaired judgment and behavior has involved trouble with the law, including the recent Wal-Mart incident and she has not improved in the time she was at TVBH. Dr. Iverson believes appellant is at high risk for a similar situation occurring again.

{¶ 15} On cross-examination, Dr. Iverson was asked whether appellant's behavior and thought processes were similar to her prior hospitalization in 2013. Dr. Iverson

answered yes and mentioned the facts regarding a previous arrest and hospitalization for competency restoration.

{¶ 16} Dr. Iverson explained that appellant does not believe she has a mental illness and, thus, refuses medication. Without medication treatment, Dr. Iverson believes she will not improve. S.T., appellant's daughter, also testified at the hearing.

{¶ 17} Based upon the testimony, the magistrate found the evidence was clear and convincing that appellant suffers from a mental illness, diagnosed as schizophrenia, which presents a substantial disorder of thought, perception, and memory which results in a gross impairment of her judgment. The magistrate found clear and convincing evidence that appellant represented a substantial risk of harm to herself since she was unable to care for her basic physical needs outside of the hospital setting. Finally, the magistrate concluded that the least restrictive alternative for her current treatment was inpatient hospitalization in a civil mental hospital pursuant to R.C. 5122.15(E).

{¶ 18} Based on the record, the testimony of Dr. Iverson presents clear and convincing evidence to support the trial court's finding that appellant is a mentally ill person, who, because of her illness, represented a substantial risk of physical harm to herself or others under R.C. 5122.01(B). Appellant, as a result of her mental illness, threatened to shoot and kill Wal-Mart employees and believed the staff at TVBH was trying to kill her. The trial court had clear and convincing evidence that appellant has a substantial mental disorder and that the mental disorder grossly impairs her functioning. Further, the trial court had clear and convincing evidence that appellant must be hospitalized because she did not recognize that she has a mental illness and needs treatment and, as such, represented a substantial risk of physical harm to herself and others that satisfies R.C. 5122.01(B).

{¶ 19} Appellant's assignment of error also seems to contend that the trial court's order concerning the forced medication order was against the manifest weight of the evidence. Since appellant was already released from TVBH and received the forced medication, this argument is rendered moot. "A matter is moot where a judgment is sought upon a matter which, when judgment is rendered, will not have any practical effect upon the issues raised by the pleadings." *Witkowski v. Arditi*, 123 Ohio App.3d 26, 30 (7th Dist.1997). Even if a case is moot, an appellate court may decide the appeal if an exception

to the mootness doctrine applies. The "capable of repetition yet evading review" exception applies only in exceptional circumstances when (1) the challenged action is too short in duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *State ex rel. White v. Kilbane Koch*, 96 Oho St.3d 395, 2002-Ohio-4848. That exception applies in this case. However, the evidence provided in this case supported the order of forced medication. *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176, 189 (2000), fn. 8.

{¶ 20} In *Steele*, at paragraph six of the syllabus and 187-88, the Supreme Court of Ohio held that the standard for court authorization of forced treatment by providing that the applicant must prove by clear and convincing evidence the following:

> (1) [T]he patient does not have the capacity to give or withhold informed consent regarding his/her treatment, (2) it is in the patient's best interest to take the medication, i.e., the benefits of the medication outweigh the side effects, and (3) no less intrusive treatment will be as effective in treating the mental illness.

{¶ 21} The magistrate conducted a hearing on the application for authority to forcibly medicate appellant. Dr. Iverson again testified. He stated he believed appellant lacked the capacity to make an informed medical treatment decision because she does not appreciate that she has schizophrenia, and she is not able to process the information rationally. Dr. Iverson was not aware of a less-intrusive treatment alternative than his suggested medication, and with the treatment, appellant's prognosis is fair and without treatment, her prognosis is poor.

{¶ 22} On cross-examination, Dr. Iverson explained that appellant did not believe she was ill and therefore refused any medication, despite acknowledging that medication had helped her in the past.

{¶ 23} Andrew Savageau, M.D., also testified. Dr. Savageau, a licensed psychiatrist working at TVBH, concurred with Dr. Iverson's opinion that appellant has schizophrenia and is unaware that she is ill. Dr. Savageau believed the proposed treatment plan was very appropriate and was not aware of a lesser-intrusive alternative consistent with her needs. Dr. Savageau believed the benefits of treatment far outweighed any risks. Dr. Savageau also agreed with Dr. Iverson that appellant's prognosis would be fair given treatment and

without medication, her "illness will continue indefinitely and possibly worsen." (Mar. 1, 2017 Hearing Tr. at 44.)

{¶ 24} Based on this testimony, the magistrate recommended that the hospital be authorized to treat and medicate appellant according to the terms of the application to authorize psychiatric treatment. Both doctors testified that appellant lacked the capacity to make an informed treatment decision because she does not acknowledge that she has a mental illness. Both doctors believed it was in appellant's best interest to receive this medication and recommended treatment. Both doctors testified appellant was successfully treated with the proposed medication previously, and Dr. Savageau testified that the benefits far outweighed any risk. Both doctors stated that they were unaware of any less-intrusive treatment alternative consistent with her needs. Dr. Savageau also agreed with Dr. Iverson that appellant's prognosis would be fair given treatment and without medication, her illness would continue and possibly worsen. Thus, the trial court had clear and convincing evidence consistent with the requirements of *Steele* that supported the order of forced medication.

{¶ 25} Appellant argued in her objection in the trial court and in her brief before this Court that the trial court relied on testimony regarding the facts supporting her prior hospitalization in 2013. While Dr. Iverson did testify regarding those facts, the trial court specifically stated that it put "little weight on the statement by the doctor concerning" the facts regarding appellant's previous hospitalization. (Apr. 24, 2017 Jgmt. Entry at 11.) The trial court mentioned only that the incident "is but one incident showing a pattern of [appellant's] troubling behaviors." *Id.* Thus, the trial court did not rely on those facts to support its order. The evidence provided at the hearings was sufficient without any mention of previous incidents.

{¶ 26} Finally, appellant seems convinced that the trial court relied on her arrest as evidence to support the civil commitment. However, the civil commitment process is separate from the criminal process, and the trial court properly followed the mandates of R.C. Chapter 5122. Appellant's sole assignment of error is overruled.

## IV. CONCLUSION

{¶ 27} For the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is affirmed.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.

_____