[Cite as *In re A.C.*, 2021-Ohio-2116.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                :

                                    No. 20AP-82

A.C.                      :        (Prob. Ct. No. MI-030965)

       [Appellant].             :        (ACCELERATED CALENDAR)

D E C I S I O N

Rendered on June 24, 2021

**On brief:** *Steven McGann*, for appellant. **Argued:** *Steven McGann*.

**On brief:** *J. Michael Evans*, for appellee Franklin County Alcohol, Drug and Mental Health Board. **Argued:** *J. Michael Evans*.

APPEAL from the Franklin County Court of Common Pleas, Probate Division

PER CURIAM

{¶ 1} Appellant, A.C., appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, declaring appellant a mentally ill person subject to court-ordered hospitalization for a period not to exceed 90 days. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On January 8, 2020, Licensed Independent Social Worker Emily Holley submitted an affidavit of mental illness to the probate court. In the affidavit, Holley avers appellant is a mentally ill person subject to court order under the criteria set forth in R.C. 5122.01(B)(2) and (4). The facts supporting Holley's assertion are set forth in the narrative portion of her affidavit as follows:

> [Appellant] is assigned the diagnosis of Unspecified Schizophrenia Spectrum and Other Psychotic Disorder. On the afternoon of 01/07/2020, [appellant's] housing staff contacted Netcare with concerns for [appellant's] decompensation and increased aggression. Housing staff reported that [appellant] had invited a neighbor into her car on 01/06/2020 under the pretense of going to the grocery store but instead, drove recklessly for 7 hours with the neighbor and [appellant's] children trapped in the car. [Appellant] reportedly threatened to kill her neighbor and told the neighbor that the neighbor's "spirit was affecting the behavior" of [appellant's] children. [Appellant] was reportedly laughing inappropriately and appeared to be attending to internal stimuli. Housing staff reported another incident on 01/02/2020 where [appellant] threatened to have her dog bite another neighbor. [Appellant] has reportedly not been compliant with outpatient treatment in at least 3 months.
>
> Pre-screener attempted to meet with [appellant] on the morning of 01/08/2020 but [appellant] did not answer. Probate Manager, Meredith Rinehart, LPCC, recommended that probate order be filed sight unseen due to reliable information about immediate and acute risk. [Appellant] needs to be brought into Netcare to ensure the safety of others and to facilitate psychiatric stabilization.

(Holley Aff. at 2, filed Jan. 8, 2020.)

{¶ 3} A magistrate reviewed the affidavit and determined there was probable cause to believe appellant was a mentally ill person subject to court order. Accordingly, the magistrate issued an order of detention on January 8, 2020. Appellant was subsequently taken into custody by the Franklin County Sherriff and turned over to appellee, Franklin County Alcohol, Drug and Mental Health ("ADAMH") Board. Appellee admitted appellant to Ohio State University ("OSU") Harding Hospital in Columbus for inpatient treatment.

{¶ 4} On January 10, 2020, the probate court issued an entry appointing legal counsel to represent appellant and appointing William Bates, M.D., as "Court doctor" for the purpose of examining appellant and reporting his opinion to the court pursuant to R.C. Chapter 5122. (Jan. 10, 2020 Entry at 1.) The probate court also scheduled an evidentiary hearing before a magistrate for January 15, 2020 to consider the affidavit of mental illness.

{¶ 5} At the January 15, 2020 evidentiary hearing, a probate court magistrate heard testimony from appellant and Dr. Bates. The probate court also admitted exhibits,

including appellant's mental health records. At the hearing, appellant stipulated Dr. Bates was an expert in psychiatry, and he was qualified to offer his opinion regarding appellant's mental health and whether she is subject to court-ordered hospitalization.

{¶ 6} On January 15, 2020, the magistrate issued a decision. Based on the evidence submitted at the January 15, 2020 hearing, the magistrate concluded appellant was a mentally ill person subject to court order pursuant to R.C. 5122.01(B)(3) and (4). The magistrate recommended inpatient hospitalization for a period not to exceed 90 days.

{¶ 7} On January 21, 2020, appellant filed an objection to the magistrate's decision and the transcript of the evidentiary hearing. The probate court scheduled a hearing on the objection for January 30, 2020. On January 30, 2020, the probate court issued a decision and judgment entry overruling appellant's objections and adopting the magistrate's decision as its own. The probate court determined appellant "was a mentally ill individual subject to court-ordered involuntary commitment who was properly committed to Franklin County ADAMH Board for treatment for a period of time not to exceed ninety (90) days from the date the Magistrate's Decision was issued, with placement at the Ohio State University Harding Hospital." (Jan. 30, 2020 Decision at 11.)

{¶ 8} Appellant timely appealed to this court from the January 30, 2020 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Appellant assigns the following as trial court error:

> 1. THE TRIAL COURT ERRED IN ADOPTING THE JANUARY 15, 2020 MAGISTRATE'S REPORT AND DECISION FINDING THAT APPELLANT SUFFERS FROM A MENTAL ILLNESS REQUIRING HOSPITALIZATION.

> 2. THE TRIAL COURT ERRED IN ADOPTING THE JANUARY 15, 2020 MAGISTRATE'S REPORT AND DECISION FINDING THAT APPELLANT SUFFERS FROM A MENTAL ILLNESS AND REQUIRES FORCED PSYCHOTROPIC MEDICATION.

## III. STANDARD OF REVIEW

{¶ 10} The clear-and-convincing evidence requirement applies to involuntary commitment cases brought pursuant to R.C. 5122.01(B). *In re P.A.*, 10th Dist. No. 17AP-728, 2018-Ohio-2314, ¶ 13, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), and *In re R.T.*, 10th Dist. No. 13AP-291, 2013-Ohio-4886, ¶ 12. Accordingly, " 'a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it

to satisfy the requisite degree of proof.' " *P.A.* at ¶ 13, quoting *Schiebel* at 74. If the judgment is supported by some competent, credible evidence going to all the essential elements of the case, an appellate court must affirm it. *P.A.* at ¶ 13, citing *Schiebel* at 74. "In determining whether the record contains the necessary competent, credible evidence, a reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way." *P.A.* at ¶ 13, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "However, reviewing courts 'must always be mindful of the presumption in favor of the finder of fact.' " *P.A.* at ¶ 13, quoting *Eastley* at ¶ 21.

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 11} In appellant's first assignment of error, appellant contends the probate court erred in adopting the magistrate's finding that appellant is a mentally ill person in need of hospitalization. We disagree.

{¶ 12} "R.C. Chapter 5122 sets forth specific procedures for the involuntary commitment of a person to a mental hospital. In a non-emergency situation, that process commences with the filing of an affidavit of mental illness in the probate court." *P.A.* at ¶ 9, citing R.C. 5122.11; *In re Miller*, 63 Ohio St.3d 99, 101 (1992). "In the affidavit, the affiant must state facts sufficient to indicate probable cause to believe that the person named in the affidavit is a mentally ill person subject to court order." *P.A.* at ¶ 9, citing R.C. 5122.11; *Miller* at 105. "If the probate court determines that such probable cause exists, the court may order the temporary detention of the person and/or set the matter for further hearing." *P.A.* at ¶ 9, citing R.C. 5122.11.

{¶ 13} Appellant does not challenge the probable cause determination in this case. Appellant concedes that Holley's affidavit supports the magistrate's finding that there was probable cause to believe appellant was a mentally ill person subject to court order under the criteria set forth in R.C. 5122.01(B)(2) and (4). Rather, appellant contends the trial court erred when it overruled her objections to the magistrate's decision and adopted the magistrate's finding that she was a mentally ill person subject to court order pursuant to R.C. 5122.01(B)(3) and (4).

{¶ 14} A "mentally ill person subject to court order" is a mentally ill person, who because of the person's illness:

> (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;
>
> (4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.

R.C. 5122.01(B)(1) through (4).

{¶ 15} A "mental illness" is a "substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." R.C. 5122.01(A). Under the statutory criteria, in order for the probate court to order involuntary commitment of a person, a probate court must find by clear and convincing evidence that: (1) the person has a substantial mental disorder, (2) the mental disorder grossly impairs the person's functioning, and (3) the person must be hospitalized for one of the reasons set forth in R.C. 5122.01(B)(1) through (4). *P.A.*, 2018-Ohio-2314, at ¶ 12, citing *In re D.B.*, 10th Dist. No. 14AP-44, 2014-Ohio-1464, ¶ 10; *In re R.T.*, 10th Dist. No. 13AP-291, 2013-Ohio-4886, ¶ 12. The Supreme Court of Ohio has established a totality of the circumstances test to determine whether a person is subject to hospitalization under R.C. 5122.01(B)(1), (2), (3), or (4). *In re T.B.*, 10th Dist. No. 11AP-99, 2011-Ohio-1339, ¶ 13, citing *In re Burton*, 11 Ohio St.3d 147, 149 (1984).

{¶ 16} Each component in the definition of a "mentally ill person subject to court order" must be established by clear and convincing evidence.   " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re R.T.*, 10th Dist. No. 17AP-288, 2019-Ohio-618, ¶ 10, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 17} *Burton* set forth a non-exclusive list of the factors a court must consider in determining whether a person is subject to hospitalization under R.C. 5122.01(B).   The factors include:

> (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

*Id.* at 149-50.

{¶ 18} The question presented by appellant's first assignment of error is whether appellee proved, by clear and convincing evidence, that: (1) appellant is suffering from a substantial mental disorder that grossly impairs her functioning, (2) without the commitment order sought, appellant is unable to provide for and is not providing for her basic physical needs because of her mental illness and appropriate provision for those needs cannot be made immediately available in the community, (3) appellant would benefit from outpatient treatment for her mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial

rights of others or herself, and (4) inpatient commitment for a period not to exceed 90 days is the least restrictive alternative available that is consistent with her treatment goals. *In re D.F.*, 10th Dist. No. 08AP-252, 2008-Ohio-2294, ¶ 20. Having reviewed the entire record in light of the *Burton* factors, we find competent, credible evidence in the record to support the probate court's determination that appellant is a mentally ill person subject to court order pursuant to the criteria set forth in R.C. 5122.01(B)(4) and that hospitalization for a period of no more than 90 days is the least restrictive option available.[1] After meeting with appellant and reviewing her mental health records, Dr. Bates reached the following diagnosis relative to appellant's mental health:

> Q. Doctor, how long did you spend in conversation with [Appellant]?
>
> A. Maybe 20 minutes.
>
> Q. And based upon your examination of her, did she suffer from a mental illness?
>
> A. Yes, she does.
>
> Q. And what is that mental illness?
>
> A. I think she has schizophrenia spectrum disorder.
>
> Q. And for purposes of this hearing, can you just go over it? What is a schizophrenia spectrum disorder?
>
> A. Well, you would start from – schizophrenia itself is considered a psychotic disorder. The person is out of touch with reality, perhaps experiencing hallucinations and delusions. And for research purposes, schizophrenia gets defined fully, specifically, like a certain period – must last a certain period of time, must have a certain number of features.

(Tr. at 8-9.)

{¶ 19} With respect to the question whether appellant suffers from a "mental illness," as that term is defined in R.C. 5122.01(A), Dr. Bates opined as follows:

> Q. Doctor, based on your examination of the patient, of [Appellant], does she suffer from a substantial disorder of thought, mood, orientation, perception, memory?
>
> A. I think it's primarily one of thought, this tendency toward delusional interpretation of reality and a lack of insight that goes along with it.

---

[1] The record shows that appellant was released from OSU Harding Hospital prior to the hearing on appellant's objections.

Q. And that – that thought disorder, in your opinion, is – is substantial?

A. It is. It's substantial enough that it's got her into trouble here.

Q. And does this substantial disorder of thought, does it grossly impair her judgment and her behavior, her ability to recognize reality and meet the ordinary demands of life, or –

A. I would say all of those areas.

(Tr. at 12-13.)

{¶ 20} Dr. Bates further opined on direct examination that appellant was a mentally ill person subject to court-ordered hospitalization under the criteria set forth in R.C. 5122.11(B)(4):

Q. Does her – does her behavior create a grave and imminent risk to her rights as well as the substantial rights of others?

* * *

A. Yes, I think hers, and certainly interfering with her life, and to others, and that people are apparently feeling threatened to the point that they initiated proceedings to get her treated.

(Tr. at 16-17.)[2]

{¶ 21} Appellant argues her testimony at the evidentiary hearing refuted the assertions in Holley's affidavit and completely undermined the opinion testimony from Dr. Bates. We disagree.

{¶ 22} Appellant testified she has two young children, and she home schools her oldest daughter. Appellant testified all the information in the affidavit came from a

---

[2] Dr. Bates also opined that appellant was a mentally ill person subject to court-ordered hospitalization under the criteria set forth in R.C. 5122.11(B)(2):

Q. Does [Appellant] presently represent a substantial risk of physical harm to others as representative of maybe violent behavior, homicidal ideations, behavior that would put a reasonable person at risk of their lives?

A. Yes, I believe so. It appears that she – even though she denies doing any, like, kidnapping someone, apparently there was a friend who reported that she had been kidnapped, that she had been denied the ability to get out of the car and go home, and that she was driven around. Apparently she's made threats to harm a particular neighbor.

So I think in that regard, she represents a danger to others.

(Tr. at 14.)

neighbor who told lies about appellant to get her hospitalized. With respect to the incident on January 6, 2020, appellant claimed her neighbor voluntarily accompanied her while she ran errands. Appellant claims she first stopped at the Franklin County Courthouse to pay her rent into escrow, and she produced a receipt she received from the clerk, dated January 6, 2020 at 4:28 p.m., in support of her testimony. (Ex. A.) Appellant told the magistrate her neighbor and her two children left the vehicle and accompanied her to the clerk's office. Appellant testified she stopped at the drive-thru window of both Wendy's and Taco Bell after paying her rent before stopping at a department store at the Polaris Mall. Appellant testified her neighbor and her two children went into the store with her. Appellant produced a receipt for some items she purchased at Burlington Coat Factory dated January 6, 2020 at 6:58 p.m. (Ex. B.)[3]

{¶ 23} In determining whether the record contains the necessary competent, credible evidence, this court "must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way." *P.A.*, 2018-Ohio-2314, at ¶ 13, citing *Eastley*, 2012-Ohio-2179, at ¶ 20. This court must always be mindful of the presumption in favor of the finder of fact. *P.A.* at ¶ 13, quoting *Eastley* at ¶ 21. Appellant's testimony and the receipts she produced establish only that appellant visited the clerk's office and the Burlington Coat Factory on the day in question and at the times indicated. In our view, appellant's evidence did not require the trial court to dismiss all the averments in the affidavit as untrue as she now claims. Moreover, in her testimony at the evidentiary hearing, appellant claimed her neighbor agreed to accompany her on January 6, 2020 for the purpose of purchasing new car battery terminals because her neighbor had broken the terminal bushings on her other vehicle in an attempt to help appellant repair the vehicle.[4] Appellant did not provide any evidence that she purchased a battery or battery terminals, nor did she provide any evidence that she visited a store that carried them.

{¶ 24} During her testimony, appellant also related an odd story involving another neighbor and a shower curtain. Appellant maintained that she is a plus size model and that she has a public Facebook account where she posts photos. In one of her photos, an

---

[3] The magistrate withheld a ruling on the admission of Exhibits A and B, but the probate court admitted the exhibits in ruling on appellant's objections.
[4] Appellant referred to the terminal bushings as the "bolt[s] that go into the battery." (Tr. at 23.)

"elegant" and "different" shower curtain in her residence can be seen in the background. (Tr. at 43.) Appellant claims that subsequent to posting the photo, she drove by her neighbor's residence and saw through her neighbor's window that her neighbor either had the same shower curtain or had a window curtain with the same pattern. Appellant maintained that by displaying the curtain, her neighbor was attempting to "personize [sic] me and * * * attack my character, and trying to accuse me of things I'm not doing." (Tr. at 35.) Dr. Bates testified appellant referred to her neighbor's conduct with the shower curtain as "voodoo," but appellant denied this. (Tr. at 34.)

{¶ 25} Appellant further stated the neighbor who attempted to appropriate her shower curtain is the same neighbor who earlier attempted to run her over with her car. Appellant claimed another neighbor had captured the attempt on video, but no video evidence was produced at trial. Appellant claimed the neighbor subsequently smeared dog feces on her windows and fence. According to appellant, the same neighbor had previously assaulted her when appellant was five months pregnant and then got into a "fistfight" with the neighbor who appellant allegedly kidnapped on January 6, 2020. (Tr. at 42.) Appellant stated her current dispute with her landlord began when nothing was done about this incident.

{¶ 26} Appellant claimed she sought a restraining order against the neighbor who attempted to run her over with her car, but she was unable to testify in support of the restraining order because she had been hospitalized at OSU Harding Hospital. According to appellant, the neighbor she allegedly kidnapped gave false information to Holley so that appellant would be hospitalized and unable to testify in support of her restraining order against the other neighbor. Appellant also claimed the staff in her apartment complex knew she was being targeted by other neighbors but did nothing to help her.

{¶ 27} Appellant stated while she was in OSU Harding Hospital, she was the victim of an assault that left bruises on her body. Appellant told hospital staff that unidentified individuals were entering her room at night, and she asked them to check the video cameras to obtain proof of her claim. According to appellant, hospital staff responded to the incident by filing a "fake" report. (Tr. at 50.)

{¶ 28} When appellee's trial counsel asked appellant if she had ever been diagnosed with a mental illness, appellant responded as follows:

A. Well, for – I can agree with basically when I got in a car accident, I have basically anxiety attacks. So, basically, like, when I was driving – but I got over that period. So I – I don't have anxiety attacks anymore. Because I was in a car accident on the freeway.

Q. How long ago was that?

A. That was in 2016.

(Tr. at 45.)

{¶ 29} Appellant acknowledged she was previously committed to a mental health facility in 2016 and has been prescribed anti-psychotic medication, but she denied being psychotic. She testified she sees her doctor once a month, her nurse every other week, and her social worker visits her once a week. Appellant stated she would continue to take her medication after she was released from the hospital if it was necessary for her to keep her children.

{¶ 30} According to Dr. Bates, appellant suffers from a mental illness with a diagnosis of "schizophrenia spectrum disorder." (Tr. at 9.) In the opinion of Dr. Bates, appellant's mental illness constitutes a substantial disorder of thought that grossly impairs appellant's judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life. Dr. Bates further opined appellant's mental illness creates a grave and imminent risk to her substantial rights and the substantial rights of others, and appellant would greatly benefit from inpatient treatment. Dr. Bates formed his opinions after reviewing Holley's affidavit, appellant's mental health records, including the records from her prior hospitalization in 2016, and conducting a personal interview with appellant.

{¶ 31} Appellant nevertheless claims that because Dr. Bates retreated from his position that appellant represents a substantial risk of physical harm to others, the probate court erred when it overruled her objections to the magistrate's decision and declared her a mentally ill person subject to court order. We find this argument unavailing given the fact that neither the magistrate nor the probate court declared appellant a mentally ill person subject to court order under R.C. 5122.01(B)(2). Rather, both the magistrate and the probate court found appellant was a mentally ill person subject to court order under the criteria set forth in R.C. 5122.01(B)(3) and (4), and inpatient hospitalization for a period not to exceed 90 days was the least restrictive option. The criteria in R.C. 5122.01(B)(3) or

(4) do not require a finding that appellant represents a substantial risk of physical harm to others.

{¶ 32} Moreover, Dr. Bates acknowledged only that it would be "less likely" that appellant would represent a substantial risk of physical harm to others if the averments that appellant kidnapped and threatened to kill her neighbor on January 6, 2020 were proven untrue. (Tr. at 57.) Dr. Bates did not express a similar lack of confidence in his opinion that appellant qualifies as a mentally ill person subject to court-ordered hospitalization under the criteria set forth in R.C. 5122.01(B)(4). In fact, on re-direct examination, Dr. Bates expressly reasserted his prior opinion in regard to the criteria set forth in R.C. 5122.01(B)(4) as follows:

> Q. You testified previously that in your opinion, [Appellant] suffers from a mental illness, correct?
>
> A. I believe this is the case, yes.
>
> Q. And –
>
> A. That's my testimony.
>
> Q. And do you still believe that she suffers from a mental illness?
>
> A. I do.
>
> Q. Do you still believe, Doctor, that she suffers from a substantial disorder of thought?
>
> A. I do.
>
> Q. Okay. And do you believe that that substantial disorder of thought grossly impairs her judgment and her behavior and her capacity to recognize reality and ability to meet the ordinary demands of life?
>
> A. I do.
>
> Q. Okay. Do you also believe that she would benefit for treatment from mental illness in an inpatient setting?
>
> A. Yes, I do.
>
> Q. And that her behavior creates a grave and imminent risk to her substantial rights and the substantial rights of others?
>
> A. Yes.

(Tr. at 59-60.)

{¶ 33} Dr. Bates was the only psychiatric expert to testify in this matter. Appellant did not submit the testimony of an expert psychiatrist to rebut the opinions expressed by Dr. Bates. Dr. Bates opined appellant would benefit from treatment for her mental illness in an inpatient setting, and her behavior creates a grave and imminent risk to her substantial rights and the substantial rights of others. Our review of appellant's testimony reveals support for Dr. Bates' conclusion as it is clear appellant lacks insight into her condition. She denies being psychotic even though she admits she has been prescribed anti-psychotic medication. She maintains the reason for her prior hospitalization was anxiety related to an automobile accident, and she fails to acknowledge either her pre-existing or current diagnosis of schizophrenia spectrum disorder. Appellant stated she would continue to take her prescribed medication if it was required for her to maintain custody of her two children.

{¶ 34} Appellant's testimony also corroborates Dr. Bates' claim that appellant suffers from delusional thinking. According to Dr. Bates, appellant told him that a neighbor's spirit was affecting one of her children. Dr. Bates also testified appellant has a tendency to "fill in [the] blanks in what she sees with perhaps delusional content," as evidenced by the shower curtain story. (Tr. at 10.) Appellant also referred to herself as a "public figure" and that she was "doing the modeling for career." (Tr. at 44.) Appellant admitted she told the staff at OSU Harding Hospital she had been assaulted, and unidentified individuals were entering her hospital room at night.

{¶ 35} Appellant's testimony also shows her behavior creates a grave and imminent risk to her substantial rights and the substantial rights of others. Appellant readily admitted she has ongoing disputes with two of her neighbors and the staff at her apartment complex. Appellant told the magistrate she has "three different court dates this month." (Tr. at 52.) She testified the staff at her apartment complex are "trying to target me." (Tr. at 36.) Appellant unsuccessfully sought a restraining order against one of her neighbors, and she currently pays her rent into escrow due to a dispute with the staff at her apartment complex. Appellant denies any fault with regard to these ongoing disputes and maintains that her neighbors are liars who are determined to harm her or see her hospitalized.

{¶ 36} Based on the foregoing, we hold that competent, credible evidence supports the probate court's finding that appellant was a mentally ill person subject to court order

pursuant to R.C. 5122.01(B)(4) and that inpatient hospitalization for a period not to exceed 90 days was the least restrictive treatment option. *In re C.J.*, 12th Dist. No. CA2019-01-013, 2019-Ohio-4403, ¶ 22 (because the record indicates C.J. continues to dispute his psychiatrist's working diagnosis, refuses to openly discuss his mental illness, and refuses to fully engage in the prescribed treatment plan, the probate court did not err in concluding that appellant would benefit from treatment for his mental illness and is in need of treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself).

{¶ 37} With regard to the criteria set forth in R.C. 5122.01(B)(3), Dr. Bates opined on direct examination as follows:

> Q. Does [appellant] represent a substantial immediate risk of serious physical harm to herself as evidenced by an inability to provide for her needs in the community and for the individuals to whom she is supposed to provide care?
>
> A. I don't know. I – you know, I – I have some concerns. She has children, and I think she is homeschooling them, training them on her own. And I think that suffering under the duress of mental illness, this is not really a good thing.
>
> Q. So she does represent a substantial and immediate risk of harm to herself?
>
> A. In that – in that sense, yes.
>
> Q. Would she benefit for treatment for mental illness?
>
> A. Yes, I believe so.
>
> Q. And what's the least restrictive environment for her to receive that treatment?
>
> A. I think inpatient stabilization right now would be the way to go. And then trans – transition her out to the community with follow-up in the community.
>
> Q. Does she already have an established community agency that she's been following prior to hospitalization, do you know?
>
> A. I – I don't recall offhand.

(Tr. at 15-16.)

{¶ 38} Though we have determined that clear and convincing evidence supports the probate court's determination that appellant is a mentally ill person, we do not believe clear and convincing evidence was presented at the evidentiary hearing to support a finding that

appellant is subject to court order pursuant to R.C. 5122.01(B)(3). First, Dr. Bates' opinion testimony is equivocal as to whether appellant represents a substantial and immediate risk of serious physical impairment or injury to self, as his opinion speaks to the risk to her children's education rather than a physical impairment or injury to herself. Substantial and immediate risk of serious physical impairment or injury to self is the primary requirement of R.C. 5122.01(B)(3). Finally, the record does not contain clear and convincing evidence that appellant is unable to provide for and is not providing for her basic physical needs because of her mental illness.

{¶ 39} Nevertheless, having determined that clear and convincing evidence supports the probate court's determination that appellant is subject to court-ordered hospitalization under the criteria set forth in R.C. 5122.01(B)(4), we must affirm the probate court order even if we do not find clear and convincing evidence to satisfy the requirements of R.C. 5122.01(B)(3). *See T.B.*, 2011-Ohio-1339, at ¶ 18 (even if the probate court lacked clear and convincing evidence to satisfy R.C. 5122.01(B)(2), the probate court order shall be affirmed because "clear and convincing evidence supports a finding under R.C. 5122.01(B)(4) that, without the hospital treatment, respondent creates a grave and imminent risk to the substantial rights of others").

{¶ 40} For the foregoing reasons, appellant's first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 41} Appellant's second assignment of error challenges an order of forced psychotropic medication that the probate court did not make. Accordingly, appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 42} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

DORRIAN, P.J., SADLER, and BEATTY BLUNT, JJ., concur.

_____